**Valerie Kaye BROOKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00691–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 16, 1992.

Henry Oncken, Houston, for appellant.

John B. Holmes, Dist. Atty., Carol Cameron, Asst., Houston, for appellee.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

COHEN, Justice.

A jury found appellant, Valerie Kaye Brooks, guilty of murder and assessed punishment at 12–years imprisonment.

■ In appellant's first point of error, she contends the evidence is insufficient to prove she killed the complainant intentionally. In determining sufficiency, we review the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

■ Every fact need not directly implicate the defendant; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Russell v. State,* 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given the testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). The jury may believe or disbelieve the witnesses, or any portion of their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

The indictment alleged:

[I]n Harris County, Texas, VALERIE KAYE BROOKS, hereafter styled the defendant, heretofore on or about September 25, 1988, did then and there unlawfully intentionally and knowingly cause the death of William Kerry Wooten, hereafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm.

It is further presented that in Harris County, Texas, VALERIE KAYE BROOKS, hereafter styled the Defendant, heretofore on or about September 25, 1988, did then and there unlawfully intend to cause serious bodily injury to

William Kerry Wooten, hereafter styled the Complainant, and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely, by shooting the Complainant with a deadly weapon, namely, a firearm.

The jury was charged on both paragraphs and returned a general verdict of guilty. Proof of either paragraph is sufficient. *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim.App.1987).

The following evidence supports the verdict: 1) on the night of the killing, appellant told her friend, Stephen Baker, that she had argued with Wooten "about a baby or something" and shot him; 2) appellant expressed no remorse to Baker, did not claim it was an accident, and did not deny intent to kill; 3) appellant fled the scene immediately, suggesting a guilty mind, *Thompson v. State*, 652 S.W.2d 770, 772 (Tex.Crim.App. [Panel Op.] 1981); 4) appellant was driven by the scene twice soon after the shooting, but instead of stopping, she ducked down as she passed; 5) immediately after the shooting, appellant hid the gun; 6) later the same night, appellant disposed of the gun and *its* bullets; 7) appellant immediately stopped living at home and moved to a motel for several days; 8) appellant never told police the shooting was accidental; 9) the medical examiner testified the wound was not a contact wound, there was no stippling, and the bullet path was consistent with Wooten having been shot by someone standing over him as he was seated; 10) appellant and Wooten, who lived together and were engaged to be married, argued before the shooting; 11) when Stephen Baker told appellant he wanted to turn her into the police, she was upset; 12) appellant asked Joseph Baker shortly after the shooting, "If your girlfriend was to shoot you, what would you do?"; 13) the murder weapon was appellant's gun, she knew how it worked, and she had fired it before; 14) the murder weapon required 4–¼ pounds of trigger pressure to fire single action and 17 pounds to fire double action.

Appellant was the only witness to the shooting. She testified it was an accident that happened as she struggled with Wooten over the gun. Viewing the evidence in a light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant had the requisite intent.

The first point of error is overruled.

█ In points of error two and three, appellant contends the trial court erred in permitting cross-examination regarding her silence before the grand jury and her failure to tell anyone in law enforcement, prior to her arrest, that the shooting was accidental.

Appellant testified on direct examination that she was subpoenaed to the grand jury and went there voluntarily. On cross-examination, the prosecutor asked her, without defense objection, why she did not testify before the grand jury, and appellant answered that she "pled the fifth" on advice of counsel.

The prosecutor then asked whether appellant had told her account to anybody in law enforcement. The trial judge sustained the objection and instructed the jury to disregard the question, but denied a motion for mistrial.

Later in the trial, the following transpired:

Q: At any time before you were arrested or before you posted bond in this case, did you speak to anyone in law enforcement and tell them your story about the alleged accidental shooting of Mr. Wooten in this case?

(Defense objection overruled)

A: Did I talk to any law enforcement?

Q: Did you talk to anyone in law enforcement, that is, anyone connected with the Houston Police Department, Harris County District Attorney's Office, Sheriff's Department, anyone in law enforcement, to tell them the story about the alleged accidental shooting of Mr. William Kerry Wooten?

A: Under the advice of my counsel, no, I didn't.

The shooting occurred on September 25, 1988. Appellant surrendered to police around October 28, 1988, made bond immediately, and was released. She testified she was never "officially arrested," but went to the sheriff's office and made bond. Apparently, she was never in custody.

Appellant's exact complaint is difficult to discern. She did not object to the question regarding her silence before the grand jury. Thus, if that is appellant's complaint, it is waived.

Regarding the prosecutor's first attempt to impeach appellant by her silence, the objection was sustained and the jury was instructed to disregard. Appellant cites no authority that such relief does not cure the harm from the error, if any.

When the prosecutor next sought to impeach appellant with silence, the question was not answered. Thus, appellant was not harmed by it.

The prosecutor's final question was answered by appellant and was not limited to the time before appellant was arrested or made bond. Although appellant did not object to it before the jury, the court had overruled appellant's objections to this evidence out of the jury's presence. Thus, the objections did not have to be repeated before the jury. Tex.R.App.P. 52(b). Thus, the merits are preserved for review, but there is no error.

In *Cisneros v. State,* 692 S.W.2d 78, 83–85 (Tex.Crim.App.1985), the court collected the many cases where cross-examination like this has been approved both by it and by the United States Supreme Court, and stated:

> While the Fifth Amendment prevents the prosecution from commenting on the silence of a defendant who asserts the right to remain silent during his criminal trial, it is not violated when a defendant, who testifies in his own defense, is impeached with his prior silence. Impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth finding function of the criminal trial.

692 S.W.2d at 84. Moreover, the court cited *Fletcher v. Weir,* 455 U.S. 603, 102

S.Ct. 1309, 71 L.Ed.2d 490 (1982), and stated:

> In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, a state does not violate due process of law by permitting cross-examination as to post-arrest silence when a defendant chooses to take the stand. A state is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post-arrest silence may be deemed to impeach a criminal defendant's own testimony.

692 S.W.2d at 85.

The second and third points of error are overruled.

■ In appellant's fourth point of error, she asserts the trial court erred in permitting Adrienne Armstrong to testify during the punishment stage to an inadmissible extraneous offense, i.e., that appellant had previously shot at him.

Trial courts generally have broad discretion to admit evidence, subject to review only for abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 381 (Tex.Crim. App.1990). Regarding this particular type of evidence at the punishment stage of trial, Texas law provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character.

Tex.Code Crim.P.Ann. art. 37.07, § 3(a) (Vernon Supp.1991).

Admission of all relevant evidence is favored. Tex.R.Crim.Evid. 402. Evidence of a defendant's character is admissible at the punishment phase, Tex.R.Crim.Evid. 404(c), and was even before the rules of evidence were adopted. *Murphy v. State,* 777 S.W.2d 44, 63 (Tex.Crim.App.1988) (op. on reh'g). In addition to a defendant's "prior criminal record," which is defined in art. 37.07, sec. 3(a), rule 404(c) allows both sides

to present "other evidence" of the defendant's character at the punishment stage.

Armstrong testified he married and divorced appellant in 1983. On August 30, 1985, appellant pointed a gun at Armstrong and shot at him twice while he was in his truck, similar to the present offense.

Under the present version of article 37.-07, section 3(a), extraneous, unadjudicated offenses have been held admissible during the punishment phase. *Holland v. State,* 820 S.W.2d 221 (Tex.App.—Fort Worth 1991, n.p.h.); *Rexford v. State,* 818 S.W.2d 494, (Tex.App.—Houston [1st Dist.], pet. ref'd)(not yet reported); *Gallardo v. State,* 809 S.W.2d 540, 541–42 (Tex.App.—San Antonio 1991, pet. granted); *Hubbard v. State,* 809 S.W.2d 316, 319–20 (Tex.App.—Fort Worth 1991, pet. granted); *McMillian v. State,* 799 S.W.2d 311, 314 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State,* 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd). Two courts have held such evidence inadmissible. *Grunsfeld v. State,* 813 S.W.2d 158, 171 (Tex.App.—Dallas 1991, pet. granted)(en banc); *Blackwell v. State,* 818 S.W.2d 134 (Tex.App.—Waco 1991, pet. filed).

The arguments against and for admissibility are set out exhaustively in the excellent majority and dissenting opinions in *Grunsfeld.* A panel of this Court held such evidence admissible in *Rexford v. State.* We will follow *Rexford* in order to maintain consistency among our panels on this point of law, while awaiting the decisions of the Court of Criminal Appeals in the many cases in which it has granted discretionary review on this issue.

Point of error four is overruled.

In appellant's fifth point of error, she asserts that applying the new version of article 37.07, section 3(a) to her violates the Texas constitutional prohibition against ex post facto laws, because the amended version of the statute was not in effect until after this offense. TEX.CONST. art. I, sec. 16. We disagree.

A statute is procedural if it does not punish an act that was innocent when done, does not increase punishment for a crime after its commission, does not abolish a defense to a crime, and does not lessen the State's burden of proof. *Cooper v. State,* 769 S.W.2d 301, 306 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). A procedural change is not ex post facto, even though it may work to a defendant's disadvantage. *Id.* at 305–306. Article 37.07, section 3(a) does not do the prohibited things. It is a rule of evidence that affects only procedure. Appellant has no general right to be tried under the rules of evidence in effect on the day of the crime. "Ex post facto considerations do not prohibit legislative or judicial action that changes the procedures whereby it is determined what punishment is appropriate...." *Murphy v. State,* 721 S.W.2d 436, 438 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

The fifth point of error is overruled.

The judgment is affirmed.