Valerie Kaye BROOKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–00401–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 14, 1997.

Henry K. Oncken, Houston, for Appellant.

John B. Holmes, Keli Pool Roper, Houston, for Appellee.

Before COHEN, ANDELL and NUCHIA, JJ.

## OPINION

COHEN, Justice.

In this case, we must decide whether "victim impact" testimony was properly admitted at the punishment stage of a non-capital felony trial.

A jury found appellant guilty of murdering William Kerry Wooten and assessed punishment at 12–years imprisonment. We affirmed. *Brooks v. State,* 822 S.W.2d 765 (Tex.App.—Houston [1st Dist.] 1992). However, the Court of Criminal Appeals remanded the cause to us and directed us to review appellant's point of error four[1] in light of *Grunsfeld v. State,* 843 S.W.2d 521 (Tex. Crim.App.1992). *Brooks v. State,* 854 S.W.2d 659 (Tex.Crim.App.1992). We did so, sustained the fourth point of error, and remanded the cause to the trial court for a new punishment hearing. *Brooks v. State,* 853 S.W.2d 603 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Following the new punishment hearing, the jury assessed punishment at 17–years confinement. Appellant appeals from this judgment. We affirm.

In a single point of error, appellant maintains the trial court erred in admitting the following "victim impact" evidence from Brenda Williams, Wooten's sister:

> Prosecutor: Okay. Since this incident back in September of 1988 has this—has the death of your brother had an effect on your life?
>
> [Defense counsel's objection and the court's ruling.]
>
> Williams: Yes, ma'am.
>
> Prosecutor: Has it had a physical effect?
>
> Williams: Yes, ma'am.
>
> Prosecutor: What was that effect?
>
> Williams: It was like losing one of your own child. (sic)
>
> Prosecutor: Did you become physically ill?
>
> Williams: Yes, ma'am.

> Prosecutor: What is the age difference between you and your brother?
>
> Williams: Eleven years.
>
> Prosecutor: And did you help raise him?
>
> Williams: Yes, ma'am.
>
> Prosecutor: Did you end up actually going to a physician because of his death?
>
> Williams: Yes, ma'am, I did.
>
> Prosecutor: What happened to you physically?
>
> Williams: They said I was emotionally under a lot of stress, and I was headed for a nervous breakdown.
>
> Prosecutor: Okay. And I was going to ask you what happened emotionally, but is that all encompassed in your last answer? How did you fare emotionally after this?
>
> Williams: It was a long time before I was able to go back and work, and then, when I did go, I couldn't function properly because they said I still was not over it completely, and I wound up having surgery like within less than a years time.

Additionally, Williams stated that she learned about her brother's death over the radio.

Appellant contends this testimony was not relevant to any issue in the punishment phase because it was not directly related to the circumstances of the offense or necessary for rebuttal. We must determine the kind of victim impact testimony that is "relevant," and thus admissible, at the punishment phase of a felony trial.

Issues of relevance are left to the trial court's discretion and will not be reversed absent an abuse of that discretion. *Ford v. State,* 919 S.W.2d 107, 115 (Tex.Crim.App. 1996). We will not reverse unless the ruling was outside the zone of reasonable disagreement. *Id.; Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

In the first trial of this case, the court applied the version of article 37.07, § 3(a), in effect at the time of trial, not the version in effect at the time of the offense.[2] In *Brooks*

---

1. In her fourth point of error, appellant asserted the trial court erred by overruling her objection to Adrienne Armstrong's testimony. Armstrong testified during the punishment stage that he was appellant's former husband and that about three years before this offense, appellant pointed a

pistol at him and fired at him twice. 853 S.W.2d at 603.

2. *Compare* Act of June 17, 1987, 70th Leg., R.S., ch. 386, § 1, 1987 Tex. Gen. Laws 1899, 1899,

*I*, we held that, because it was a procedural statute, the 1989 version of article 37.07, § 3(a), as applied to appellant, did not constitute an unconstitutional ex post facto law. 822 S.W.2d at 769. Consequently, the 1989 amended version, TEX.CODE CRIM. P. ANN. art. 37.07, § 3(a) (Vernon Supp.1997), was applied in appellant's second punishment hearing. The pertinent part of article 37.07, § 3(a), reads:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* but not limited to ... *the circumstances of the offense for which he is being tried* ....

(Emphasis added.) The "relevant to sentencing" language has been part of the statute since 1989. The reference to "circumstances of the offense" was added in 1993.

In non-capital felony cases, evidence of a victim's injury is admissible at the punishment stage. *Stavinoha v. State,* 808 S.W.2d 76, 77, 79 (Tex.Crim.App.1991); *Miller–El v. State,* 782 S.W.2d 892, 895 (Tex.Crim.App. 1990). The Court of Criminal Appeals did not rely on TEX.CODE CRIM. P. ANN. art. 37.07, § 3(a) in deciding these cases. In fact, the court noted in *Stavinoha:*

> Both *Miller–El* and the instant cause were tried before the effective date of the 1989 amendment to Article 37.07, § 3(a). In that amendment the Legislature provided that evidence may be admitted at the punishment phase of trial "as to any matter the court deems relevant to sentencing, including" those matters previously made expressly admissible under the statute, *viz:* the prior criminal record of the defendant, his general reputation and his character. Query what the Legislature means by "relevance" in this context.

808 S.W.2d at 78 n. 2 (citations omitted).

To answer that question, the court referred to the plurality opinion in *Murphy v. State:*

> In reality, what is "relevant" to determining proper punishment is more a question

of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately, outside of Article 37.07, § 3(a), supra, it has given no clear guidance as to what considerations should inform the jury's punishment decision.

We do know, nevertheless, that certain information has been widely regarded as "relevant" to assessment of punishment. It is axiomatic, for example, that punishment should fit the particular crime. Accordingly, the trial court routinely instructs the jury it may consider all evidence admitted at the guilt phase in making its punishment determination. Additional *evidence of the circumstances of the offense may be admitted at the punishment phase,* unless the proffered evidence bears only upon an issue necessarily resolved against the proponent by the guilty verdict. Modern penological thought also holds that, along with the circumstances of the offense, "[h]ighly relevant—if not essential—to ... selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." These factors are not "relevant" in the sense that they tend to make more or less probable some identifiable issue of ultimate fact at the punishment phase. *Calling circumstances of the offense and the offender "relevant" is really no more than to say we deem that information appropriate for the factfinder to consider in exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit.*

777 S.W.2d 44, 63 (Tex.Crim.App.1988) (op. on reh'g) (citations omitted) (emphasis added).

In *Miller–El,* the court upheld the admissibility of the doctor's testimony at the punishment stage concerning the results of the victim's paralysis. 782 S.W.2d at 895. The court concluded that the effect of the victim's injury was a "circumstance of the offense," so long as the factfinder could rationally attrib-

*with* Act of June 15, 1989, 71st Leg., R.S., ch.     785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492.

ute moral culpability to the defendant for the injury. *Id.* at 896. Thus, *Miller–El* holds that the evidence of the crime's continuing impact on the victim is admissible.

In *Stavinoha,* the court approved a psychologist's testimony showing the emotional effect on the victim's mother. 808 S.W.2d at 79. The defendant, a priest, had cultivated the mother's trust by bringing her gifts and taking the complainant to church and to play. *Id.* The court noted that in *Miller–El,* it had held victim impact evidence admissible as a circumstance of the offense because it bore on the defendant's personal responsibility and moral guilt. *Stavinoha,* 808 S.W.2d at 78–79. The court concluded that a jury could rationally hold the defendant accountable for the psychological trauma to the mother because the defendant knew her well, preyed upon her vulnerability as a single parent, and should have anticipated the impact of his betrayal of trust. *Id.* at 79. Thus, *Stavinoha* held that, even before the enactment of article 37.07, § 3(a), evidence of the mother's emotional injury was admissible because it had a close, direct link to the circumstances of the offense, *i.e.,* the defendant deceived her into putting her child in his hands, thus enabling the crime to occur.

In capital felony cases, the statute comparable to article 37.07, § 3(a) is TEX.CODE CRIM. P. ANN. art. 37.071, § 2(a) (Vernon Supp.1997). Since 1991, it has contained "relevant to sentence" and "circumstances of the offense" language almost identical to article 37.07, § 3(a). The Court of Criminal Appeals interpreted article 37.071, § 2(a) in two cases decided three weeks before the second punishment hearing here, *Smith v. State,* 919 S.W.2d 96 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996), and *Ford v. State,* 919 S.W.2d 107 (Tex.Crim.App.1996).

In *Smith,* five judges, writing three opinions, agreed that evidence of the victim's good character was *inadmissible* because it

was not directly related to the circumstances of the offense or necessary for rebuttal.[3] 919 S.W.2d at 102. The court held that the trial judge erred in admitting testimony about the victim's hard work, artistry, musical inclination, education, and military experience. *Id.* at 97, 102. Specifically, the court cautioned that the factfinder was not to compare the death worthiness of the defendant and the victim. *Id.* at 102. In those respects, the present case differs from *Smith.* The evidence here was not about the victim's virtues, and because the death penalty was not a punishment option, there was no comparison here of the death worthiness of Mr. Wooten and appellant. *See McDuff v. State,* 939 S.W.2d 607, 620 (Tex.Crim.App.1997) (distinguishing *McDuff* on this basis from *Smith* ).

In *Ford,* a trial for capital murder and attempted capital murder, the judge admitted testimony from the mother and two daughters shot during the robbery and from the father of the son killed then. The survivors and the father (who was not present during the robbery, but soon discovered the dead and wounded) testified about their injuries and the crime's effect on their lives. 919 S.W.2d at 112–13. Noting that the defendant's "personal moral culpability" and "moral blameworthiness" were an issue in punishment, the Court of Criminal Appeals held the testimony was admissible. *Id.* at 115–16. Obviously, the father in *Ford* (like the mother in *Stavinoha)* was closely linked to the circumstances of the offense. A similar result was reached in two non-capital cases, *Peoples v. State,* 874 S.W.2d 804, 807 (Tex. App.—Fort Worth 1994, pet. ref'd) (mother's anguish as her son died in her arms bore on the defendant's personal responsibility and moral guilt because he should have anticipated her anguish), and *Brown v. State,* 875 S.W.2d 38, 39–40 (Tex.App.—Austin 1994, no pet.) (victim's continuing fear held admissible).[4]

---

3. Five judges joined the holding that this was error, the plurality of three (Judges Baird, Maloney, and Meyers), the concurring judge (Overstreet), and the dissenting judge (Clinton).

4. The *Brown* court distinguished "victim impact evidence" under article 37.07, § 3(a), from "victim impact statements" under TEX.CODE CRIM. P.

ANN. art. 42.03, § 1(b)(1) (Vernon Supp.1997). The latter, "victim impact statements" under article 42.03, differ from "victim impact evidence" because they are made to "the court," not to the jury; they are made "in person," *i.e.,* orally; and they are made only after the assessment of pun-

Finally, in *McDuff*, a capital murder case, the court approved evidence quite similar to that here. 939 S.W.2d at 619–20 (sister of murder victim was afraid to go out at night, she missed the victim, and the family needed a proper burial, which it never had because the victim's body was never found). The *McDuff* court relied on *Ford* and distinguished *Smith*. 939 S.W.2d at 620. The sister's testimony was deemed relevant to McDuff's moral culpability, which was a special issue that the jury had to answer during the capital murder punishment stage, pursuant to TEX.CODE CRIM. P. ANN. art. 37.071, § 2(e) (Vernon Supp.1997). In *McDuff*, the crime's effect on the sister, who was not connected to the crime, was said to be "certainly foreseeable." 939 S.W.2d at 620. Obviously, the same is true here.

Thus, we must decide whether evidence like that in *Ford* and *McDuff* was relevant there only because of the special issue that those particular juries had to answer under our death penalty procedure. *See* TEX.CODE CRIM. P. ANN. art. 37.071, § 2(e). We believe the answer is no.

■■■ In 1985, the legislature enacted article 56.03, which provides that "prior to the imposition of a sentence," judges receiving a victim impact statement "shall consider" such written statements by "a close relative of a deceased victim" concerning "any physical or psychological inquiry," "any psychological services requested as a result of the offense," or "any change in the ... relative's personal welfare or familial relationship as a result of the offense...." TEX.CODE CRIM. P. ANN. art. 56.03(a), (b)(4),(5),(6), and (e) (Vernon Supp.1997).[5] And before sentencing the defendant, the court shall permit the defendant a reasonable time to read the statement, comment on it, and with court approval, introduce testimony and evidence alleging a factual inaccuracy in the statement. TEX. CODE CRIM. P. ANN. art. 56.03(e). We consider this to be a legislative determination that such evidence is "relevant" when judges assess punishment in non-capital offenses. Before deciding punishment, judges "shall consider" such information, if it is in a "victim

impact statement." TEX.CODE CRIM. P. ANN. art. 56.03(e). If the jury assesses punishment, the judge obviously has discretion to exclude such evidence, under TEX.R.CRIM. EVID. 403 (exclusion of relevant evidence on special grounds). But in view of article 56.03, a judge would not automatically abuse his discretion by finding such evidence to be "relevant." Given a legislative determination that the evidence "shall" be considered by trial court judges, such a judge is certainly not "outside the zone of reasonable disagreement" by ruling that the same evidence may be considered by a jury. *See Ford*, 919 S.W.2d at 115–16; *Montgomery*, 810 S.W.2d at 391.

In determining the scope of evidence admissible under article 37.07, § 3(a), we are guided by provisions regarding statutory construction. *See* TEX. GOV'T CODE ANN. §§ 311.002(2), 311.023 (Vernon 1988). Moreover, the Code of Criminal Procedure provides that it "shall be liberally construed, so as to obtain the objectives intended by the Legislature: The prevention, suppression and punishment of crime." TEX.CODE CRIM. P. ANN. art. 1.26 (Vernon 1977). But the Code has other objects too, one being "to insure a fair and impartial trial." TEX.CODE CRIM. P. ANN. art. 1.03(5) (Vernon 1977). Judges reconcile these two objectives by applying TEX.R.CRIM. EVID. 403, which allows them to exclude relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence.

■■■ Moreover, we take judicial notice of the struggle between the legislature and the Court of Criminal Appeals over enlarging the scope of evidence admissible at the punishment stage of non-capital trials. *See Grunsfeld*, 843 S.W.2d at 523 (and the amendments to article 37.07 before and after it); *Clewis v. State*, 922 S.W.2d 126, 160 (White, J., dissenting) (describing the struggle). While the amendments may have been intended to overrule *Grunsfeld* specifically in order to make unadjudicated offenses admissible, the

---

ishment. TEX.CODE CRIM. P. ANN. art. 42.03, § 1(b)(1).

5. Act of June 13, 1985, 69th Leg., R.S., ch. 588, § 1, 1985 Tex. Gen. Laws 2217, 2218.

language of the amendments is far broader than that.

■ In *McDuff*, the Court of Criminal Appeals implied that, even in a death penalty case, the language "any matter the court deems relevant to sentencing" does not mean that anything goes. It stated that blaming McDuff for the breakup of the victim's sister's marriage was "more tenuous," "less foreseeable," and "more questionable" than the sister's testimony about missing the victim, about fear of going out, and about needing a proper burial.[6]  939 S.W.2d at 620. But the evidence here resembles that about which the *McDuff* court expressed no doubt. *Id.* We agree that *McDuff*'s holding does not mean that anything and everything is admissible. If that were true, discretion would never be abused. Discretion would not even be needed. In order to exercise proper discretion, a judge must first exercise some discretion. The judge here did so and did not abuse it.

We overrule the sole point of error and affirm the judgment.

---

6.  The court's point is well taken. Admitting such evidence runs the risk of opening up the punishment hearing to a retrial of the divorce case, in order to determine the real cause of the breakup, whether it be incompatibility, cruelty, adultery, the defendant's crime, or some other reason.