HACKLER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-446-CR

TERRY HACKLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

Appellant, Terry Hackler, appeals his conviction for intoxication manslaughter.  In six issues, he complains that the trial court abused its discretion during the punishment phase of his trial. 
 We affirm.

Appellant pleaded guilty to intoxication manslaughter.  After hearing the testimony regarding the circumstances of the offense,  testimony from the victim’s family, and testimony from appellant’s family and friends, a jury assessed appellant’s punishment at fourteen years in prison and a $5,000 fine.

In his first two issues, appellant contends that the trial court abused its discretion during the punishment phase by admitting a video of the fourth birthday party of the deceased victim’s daughter because the video is irrelevant and unduly prejudicial.  The State argues that the video was admissible under article 37.07 of the Texas Code of Criminal Procedure as victim character evidence to give the jury a glimpse into the victim’s life before the offense.

We review a trial court’s decision to admit evidence under an abuse of discretion standard.
(footnote: 2)  We will not reverse the trial court as long as its ruling was within the “zone of reasonable disagreement.”
(footnote: 3) 

Article 37.07 of the code of criminal procedure permits the introduction of evidence on any matter the trial court deems relevant to sentencing.
(footnote: 4)  Victim impact evidence is relevant to sentencing under article 37.07 in that it bears on the defendant’s personal responsibility.
(footnote: 5)  In 
Salazar v. State
, the court of criminal appeals stated: 

As a general proposition, victim-impact evidence may be admissible [at] the punishment stage of a criminal trial when that evidence has some bearing on the defendant’s personal responsibility and moral culpability . . . .  Such evidence is of two distinct, but related, types: victim 
character
 evidence and victim
 impact
 evidence.  The former is designed to give the jury “a quick glimpse of the life that the petitioner chose to extinguish, to remind the jury that the person whose life was taken was a unique human being.”  The latter is designed to remind the jury that the murder has foreseeable consequences to the community and the victim’s survivors . . . .  Every homicide victim is an individual, whose uniqueness the defendant did or should have considered, regardless of whether the murderer actually knew any specific details of the victim’s life or characteristics.
(footnote: 6)
 When considering the admissibility of victim impact or victim character evidence, the court in 
Salazar
 held that we must carefully consider the following factors:  (1) how probative is the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent’s need for the evidence.
(footnote: 7)  

Three of these factors
 weigh in favor of admitting the video in this case. The first factor, relevance, weighs in favor of admitting the video.  The video is less than three minutes long and shows the victim, dressed in casual clothes, with her family in a relaxed atmosphere, celebrating her daughter’s fourth birthday, lighting the candles on the birthday cake, singing Happy Birthday To You, and eating cake.  The probative value of this scene is, therefore, high because it provides a “quick glimpse” into the family life of the victim and has some bearing on appellant’s personal responsibility by depicting the uniqueness of the life of the victim that appellant should have considered.
(footnote: 8) 

The second factor listed in 
Salazar
—whether there was a potential that the video would impress the jury in some irrational, but nevertheless indelible way—also weighs in favor of admitting the video. The video shows the victim with her family as they normally acted.  Although the video likely invoked sympathy from the jurors for the victim’s family, sympathy for the victim or her family is not an irrational response.
(footnote: 9) 

The third 
Salazar
 factor favors admission of the video as well.   The time the State used to develop the video was minimal.  The sponsoring testimony of Betty McFarland, the victim’s mother-in-law, about the effect of the victim’s death on their family, and how Ashleigh, the victim’s daughter, wanted to watch the video of her mother over and over is contained in less than four pages of the 102-page reporter’s record.  And, as noted above, the video itself was less than three minutes long. 

The fourth 
Salazar
 factor, however, weighs against the video’s admission. The State’s need for the video to show the victim’s character was minimal.  The State presented numerous witnesses, including the victim’s husband, mother, and mother-in-law, all of whom testified about how happy the family was before the victim’s death, and how she was a good mother.  In light of the cumulative testimony of these witnesses, the video was unnecessary to show that the victim had been a good mother and enjoyed a happy family life.  

Because three of the four 
Salazar 
factors
 weigh in favor of admitting the video, we conclude that the trial court did not abuse its discretion by admitting the video in this case.  We overrule appellant’s first and second issues.   

In his third issue, appellant contends that the trial court erred by overruling his motion for new trial because a witness for the prosecution presented evidence to the jury in a false light.  Joe Vaughn, Jr. testified that the road on which appellant was driving before the accident had eighteen one-way signs.  At the hearing on appellant’s motion for new trial, appellant offered evidence that established that the signs were not pointed in a direction that a person driving the wrong way would clearly see them.  Appellant contends that, therefore, the jury was left with a false impression of whether he should have seen the one-way signs.  

We review the denial of a motion for new trial under an abuse of discretion standard.
(footnote: 10)  We will not reverse a trial court as long as its ruling was within the “zone of reasonable disagreement.”
(footnote: 11) 

To prevail on his motion for new trial, appellant was required to prove that the prosecutor knowingly used perjured testimony and that the reviewing court cannot determine beyond a reasonable doubt that the testimony was harmless.
(footnote: 12)  Appellant has not met this burden.  There is no evidence that Vaughn lied under oath.   Any discrepancies between his testimony and that of the witnesses who testified at the hearing on appellant’s motion for new trial are limited to their subjective differences of opinion regarding the visibility of the road signs on the night of the collision.  This is not enough to show that Vaughn committed perjury.
(footnote: 13)  Therefore, the trial court acted within its discretion by denying appellant’s motion for new trial.  We overrule appellant’s third issue.

In his fourth issue, appellant complains that the trial court abused its discretion by admitting the testimony of Jack Weir that he heard other truckers on his CB radio talking about how they had seen a person driving rapidly down the wrong side of the highway on the night in question.  Appellant contends that Weir’s statement about what the other truckers said is hearsay.  The State argues that the statements were admissible as present sense impressions. 

Under rule 803(1), “[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter,” is not excluded by the hearsay rule even if the declarant is available as a witness.
(footnote: 14)  Weir testified that he heard truckers describing the event of appellant driving down the wrong side of the highway at a high rate of speed while the truckers were perceiving the event.  These were present sense impressions.
(footnote: 15)  Therefore, the trial court did not abuse its discretion by admitting Weir’s testimony under the present sense impression exception to the hearsay rule.
(footnote: 16)  We overrule appellant’s fourth issue. 

In his fifth issue, appellant asserts that the trial court abused its discretion by admitting Brad Webb’s testimony about the difference between punishment for murder and intoxication manslaughter because it is irrelevant.

The court of criminal appeals has observed that the admissibility of evidence at the punishment phase is a function of policy rather than relevancy because there are no distinct facts that proffered evidence can be said to make more or less likely to exist.
(footnote: 17)   “Determining what is relevant . . . should be a question of what is helpful to the jury in determining the appropriate sentence in a particular case.”
(footnote: 18) The policy concerns that govern admissibility in the sentencing context include “admitting the truth in sentencing, giving complete information for the jury to tailor an appropriate sentence for appellant, and the policy of optional completeness.”
(footnote: 19)
 Appellant’s defense at trial was that the collision was an accident or a mistake.  The punishment range for intoxication manslaughter, an offense that does not require that a mental state be proven, is two to twenty years.
(footnote: 20)  Webb’s testimony was relevant because it gave the jury complete information about how the punishment range for a particular criminal offense varies when a mental state is proven.
(footnote: 21)  Because we cannot say that Webb’s testimony was not helpful to the jury in assessing appellant’s punishment for intoxication manslaughter in this case, we therefore hold that the trial court did not abuse its discretion by admitting his testimony.  Appellant’s fifth issue is overruled. 

In his sixth issue, appellant argues that the trial court improperly found that his car was used as a deadly weapon.  He contends that a deadly weapon finding in a vehicular manslaughter case is “impermissible ‘double dipping’” because the motor vehicle is not being used in furtherance of any other felony and urges us to reconsider the court of criminal appeals’s holding in 
Tyra
.
(footnote: 22)  Because we are bound by the holding of the court of criminal appeals in 
Tyra
,
(footnote: 23) we overrule appellant’s sixth issue. 

Having overruled all of appellant’s issues, we affirm the trial court’s judgment. 

PER CURIAM

PANEL A: CAYCE, C.J.;
 LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 8, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990) (op. on reh’g).  

3:
Green
, 934 S.W.2d at 102; 
Montgomery
, 810 S.W.2d at 391. 

4:
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(a)(1) (Vernon Supp. 2005). 

5:
See Jones v. State, 
963 S.W.2d 177, 183 (Tex. App.—Fort Worth 1998, pet. ref’d); 
Brooks v. State
, 961 S.W.2d 396, 398-99 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  
 

6:
Salazar v. State
, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002) (citations omitted).

7:
Id. 
at 336; 
see also Haley v. State
, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (discussing when victim impact evidence is admissible).  

8:
See Salazar
, 90 S.W.3d at 335.  

9:
See Solomon v. State
, 49 S.W.3d 356, 366 (Tex. Crim. App. 2001) (stating that 
primary danger of unfair prejudice from victim impact testimony is its tendency to encourage the jury to engage in “measuring the worth of the victim compared to other members of society” and holding that photographs of the victim and his family were not unfairly prejudicial);
 Wright v. State
, 178 S.W.3d 905, 924-25 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (noting, in analyzing the admissibility of an in-court demonstration of how the appellant killed her husband under rule 403, that the question is not whether the evidence “impressed” the jury, but whether it impressed the jury in some irrational yet indelible way).   

10:
See Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

11:
See Green,
 934 S.W.2d at 101-02.

12:
Vasquez v. State
, 67 S.W.3d 229, 239 n.19 (Tex. Crim. App. 2002) (citing 
United States v. Bagley
, 473 U.S. 667, 678, 105 S. Ct 3375, 3376 (1985)).

13:
See 
Tex. Penal Code Ann.
 § 37.02 (Vernon 2003) (listing the elements of perjury). 

14:
Tex. R. Evid.
 803(1).

15:
See Rabbani v. State
, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993) (explaining the present sense impression exception to the hearsay rule).  

16:
Green
, 934 S.W.2d at 101-02 (applying an abuse of discretion standard to claims of erroneous admission of evidence). 

17:
Mendiola v. State
, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) (citing  
Rogers v. State
, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999), and 
Miller-El v. State
, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990)); 
see also 
Tex. R. Evid.
 401 (stating that relevant evidence is evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence). 

18:
Rogers, 
991 S.W.2d at 265.

19:
Mendiola
, 21 S.W.3d at 285.

20:
See 
Tex. Penal Code Ann.
 §§ 12.33, 49.08 (Vernon 2003); 
Hardie v. State
, 588 S.W.2d 936, 938 (Tex. Crim. App. 1979).

21:
See 
Tex. Penal Code Ann.
 § 19.02(b) (Vernon 2003) (stating the mental state requirement for murder).  

22:
Tyra v. State
, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995). 

23:
See Tyra
, 897 S.W.2d at 797 (holding that driving an automobile constitutes the use of it and that driving in a manner capable of causing death or serious bodily injury constitutes using it as a deadly weapon); 
see also Mann v. State
, 58 S.W.3d 132, 133 (Tex. Crim. App. 2001) (Johnson, J., concurring) (reaffirming that Texas law authorizes a deadly weapon finding in a DWI collision); 
Wiley v. State
, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref’d) (stating that intermediate appellate courts are bound to follow the pronouncements of the court of criminal appeals).