COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-446-CR

 

TERRY HACKLER                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 235TH
DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

                    MEMORANDUM OPINION[1]

                                              ------------

Appellant, Terry Hackler, appeals his conviction
for intoxication manslaughter.  In six
issues, he complains that the trial court abused its discretion during the
punishment phase of his trial.  We
affirm.

Appellant pleaded guilty to intoxication
manslaughter.  After hearing the
testimony regarding the circumstances of the offense,  testimony from the victim=s
family, and testimony from appellant=s family
and friends, a jury assessed appellant=s
punishment at fourteen years in prison and a $5,000 fine.








In his first two issues, appellant contends that
the trial court abused its discretion during the punishment phase by admitting
a video of the fourth birthday party of the deceased victim=s
daughter because the video is irrelevant and unduly prejudicial.  The State argues that the video was
admissible under article 37.07 of the Texas Code of Criminal Procedure as
victim character evidence to give the jury a glimpse into the victim=s life
before the offense.

We review a trial court=s
decision to admit evidence under an abuse of discretion standard.[2]  We will not reverse the trial court as long
as its ruling was within the Azone of
reasonable disagreement.@[3] 

Article 37.07 of the code of criminal procedure
permits the introduction of evidence on any matter the trial court deems
relevant to sentencing.[4]
 Victim impact evidence is relevant to
sentencing under article 37.07 in that it bears on the defendant=s
personal responsibility.[5]  In Salazar v. State, the court of
criminal appeals stated: 








As a general proposition,
victim-impact evidence may be admissible [at] the punishment stage of a
criminal trial when that evidence has some bearing on the defendant=s personal
responsibility and moral culpability . . . . 
Such evidence is of two distinct, but related, types: victim character
evidence and victim impact evidence. 
The former is designed to give the jury Aa quick
glimpse of the life that the petitioner chose to extinguish, to remind the jury
that the person whose life was taken was a unique human being.@  The latter is designed to remind the jury
that the murder has foreseeable consequences to the community and the victim=s
survivors . . . .  Every homicide victim
is an individual, whose uniqueness the defendant did or should have considered,
regardless of whether the murderer actually knew any specific details of the
victim=s life
or characteristics.[6]

When considering the admissibility of victim
impact or victim character evidence, the court in Salazar held that we
must carefully consider the following factors: 
(1) how probative is the evidence; (2) the potential of the evidence to
impress the jury in some irrational, but nevertheless indelible way; (3) the
time the proponent needs to develop the evidence; and (4) the proponent=s need
for the evidence.[7]  








Three of these factors weigh in favor of
admitting the video in this case. The first factor, relevance, weighs in favor
of admitting the video.  The video is
less than three minutes long and shows the victim, dressed in casual clothes,
with her family in a relaxed atmosphere, celebrating her daughter=s fourth
birthday, lighting the candles on the birthday cake, singing Happy Birthday To
You, and eating cake.  The probative
value of this scene is, therefore, high because it provides a Aquick
glimpse@ into
the family life of the victim and has some bearing on appellant=s
personal responsibility by depicting the uniqueness of the life of the victim
that appellant should have considered.[8]


The second factor listed in SalazarCwhether
there was a potential that the video would impress the jury in some irrational,
but nevertheless indelible wayCalso
weighs in favor of admitting the video. The video shows the victim with her
family as they normally acted.  Although
the video likely invoked sympathy from the jurors for the victim=s
family, sympathy for the victim or her family is not an irrational response.[9]









The third Salazar factor favors admission
of the video as well.   The time the
State used to develop the video was minimal. 
The sponsoring testimony of Betty McFarland, the victim=s
mother-in-law, about the effect of the victim=s death
on their family, and how Ashleigh, the victim=s
daughter, wanted to watch the video of her mother over and over is contained in
less than four pages of the 102-page reporter=s
record.  And, as noted above, the video
itself was less than three minutes long. 

The fourth Salazar factor, however, weighs
against the video=s admission. The State=s need
for the video to show the victim=s
character was minimal.  The State
presented numerous witnesses, including the victim=s
husband, mother, and mother-in-law, all of whom testified about how happy the
family was before the victim=s death,
and how she was a good mother.  In light
of the cumulative testimony of these witnesses, the video was unnecessary to
show that the victim had been a good mother and enjoyed a happy family life.  

Because three of the four Salazar factors
weigh in favor of admitting the video, we conclude that the trial court did not
abuse its discretion by admitting the video in this case.  We overrule appellant=s first
and second issues.   








In his third issue, appellant contends that the
trial court erred by overruling his motion for new trial because a witness for
the prosecution presented evidence to the jury in a false light.  Joe Vaughn, Jr. testified that the road on
which appellant was driving before the accident had eighteen one-way
signs.  At the hearing on appellant=s motion
for new trial, appellant offered evidence that established that the signs were
not pointed in a direction that a person driving the wrong way would clearly
see them.  Appellant contends that,
therefore, the jury was left with a false impression of whether he should have
seen the one-way signs.  

We review the denial of a motion for new trial
under an abuse of discretion standard.[10]  We will not reverse a trial court as long as
its ruling was within the Azone of
reasonable disagreement.@[11] 








To prevail on his motion for new trial, appellant
was required to prove that the prosecutor knowingly used perjured testimony and
that the reviewing court cannot determine beyond a reasonable doubt that the
testimony was harmless.[12]  Appellant has not met this burden.  There is no evidence that Vaughn lied under
oath.   Any discrepancies between his
testimony and that of the witnesses who testified at the hearing on appellant=s motion
for new trial are limited to their subjective differences of opinion regarding
the visibility of the road signs on the night of the collision.  This is not enough to show that Vaughn
committed perjury.[13]  Therefore, the trial court acted within its
discretion by denying appellant=s motion
for new trial.  We overrule appellant=s third
issue.

In his fourth issue, appellant complains that the
trial court abused its discretion by admitting the testimony of Jack Weir that
he heard other truckers on his CB radio talking about how they had seen a
person driving rapidly down the wrong side of the highway on the night in
question.  Appellant contends that Weir=s
statement about what the other truckers said is hearsay.  The State argues that the statements were
admissible as present sense impressions. 








Under rule 803(1), A[a]
statement describing or explaining an event or condition made while the
declarant was perceiving the event or condition, or immediately thereafter,@ is not
excluded by the hearsay rule even if the declarant is available as a witness.[14]  Weir testified that he heard truckers
describing the event of appellant driving down the wrong side of the highway at
a high rate of speed while the truckers were perceiving the event.  These were present sense impressions.[15]  Therefore, the trial court did not abuse its
discretion by admitting Weir=s
testimony under the present sense impression exception to the hearsay rule.[16]  We overrule appellant=s fourth
issue. 

In his fifth issue, appellant asserts that the
trial court abused its discretion by admitting Brad Webb=s
testimony about the difference between punishment for murder and intoxication
manslaughter because it is irrelevant.

The court of criminal appeals has observed that
the admissibility of evidence at the punishment phase is a function of policy
rather than relevancy because there are no distinct facts that proffered
evidence can be said to make more or less likely to exist.[17]   ADetermining
what is relevant . . . should be a question of what is helpful to the jury in
determining the appropriate sentence in a particular case.@[18] The
policy concerns that govern admissibility in the sentencing context include Aadmitting
the truth in sentencing, giving complete information for the jury to tailor an
appropriate sentence for appellant, and the policy of optional completeness.@[19]








Appellant=s
defense at trial was that the collision was an accident or a mistake.  The punishment range for intoxication
manslaughter, an offense that does not require that a mental state be proven,
is two to twenty years.[20]  Webb=s
testimony was relevant because it gave the jury complete information about how
the punishment range for a particular criminal offense varies when a mental
state is proven.[21]  Because we cannot say that Webb=s
testimony was not helpful to the jury in assessing appellant=s
punishment for intoxication manslaughter in this case, we therefore hold that
the trial court did not abuse its discretion by admitting his testimony.  Appellant=s fifth
issue is overruled. 








In his sixth issue, appellant argues that the
trial court improperly found that his car was used as a deadly weapon.  He contends that a deadly weapon finding in a
vehicular manslaughter case is Aimpermissible
>double
dipping=@ because
the motor vehicle is not being used in furtherance of any other felony and
urges us to reconsider the court of criminal appeals=s
holding in Tyra.[22]  Because we are bound by the holding of the
court of criminal appeals in Tyra,[23]
we overrule appellant=s sixth issue. 

Having overruled all of appellant=s
issues, we affirm the trial court=s
judgment. 

 

PER CURIAM

PANEL A:   CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  June 8, 2006

 

 











[1]See Tex. R. App. P. 47.4.





[2]See Green v. State, 934 S.W.2d 92, 101-02
(Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery
v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990) (op. on reh=g).  





[3]Green, 934 S.W.2d at 102; Montgomery,
810 S.W.2d at 391. 





[4]Tex.
Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon Supp.
2005). 





[5]See Jones v. State, 963 S.W.2d 177, 183 (Tex.
App.CFort Worth 1998, pet. ref=d); Brooks v. State,
961 S.W.2d 396, 398-99 (Tex. App.CHouston [1st Dist.] 1997, no pet.).   





[6]Salazar v. State, 90 S.W.3d 330, 335
(Tex. Crim. App. 2002) (citations omitted).





[7]Id. at 336; see also Haley
v. State, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (discussing when
victim impact evidence is admissible).  





[8]See Salazar, 90 S.W.3d at 335.  





[9]See Solomon v. State, 49 S.W.3d 356, 366
(Tex. Crim. App. 2001) (stating that primary danger of unfair prejudice from
victim impact testimony is its tendency to encourage the jury to engage in Ameasuring the worth of
the victim compared to other members of society@ and holding that
photographs of the victim and his family were not unfairly prejudicial);
Wright v. State, 178 S.W.3d 905, 924-25 (Tex. App.CHouston [14th Dist.]
2005, pet. ref=d) (noting, in analyzing
the admissibility of an in-court demonstration of how the appellant killed her
husband under rule 403, that the question is not whether the evidence Aimpressed@ the jury, but whether it
impressed the jury in some irrational yet indelible way).   





[10]See Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995).





[11]See Green, 934 S.W.2d at 101-02.





[12]Vasquez v. State, 67 S.W.3d 229, 239 n.19
(Tex. Crim. App. 2002) (citing United States v. Bagley, 473 U.S. 667,
678, 105 S. Ct 3375, 3376 (1985)).





[13]See Tex.
Penal Code Ann.
' 37.02 (Vernon 2003)
(listing the elements of perjury). 





[14]Tex.
R. Evid.
803(1).





[15]See Rabbani v. State, 847 S.W.2d 555, 560
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993) (explaining
the present sense impression exception to the hearsay rule).  





[16]Green, 934 S.W.2d at 101-02
(applying an abuse of discretion standard to claims of erroneous admission of
evidence). 





[17]Mendiola v. State, 21 S.W.3d 282, 285
(Tex. Crim. App. 2000) (citing  Rogers
v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999), and Miller-El v.
State, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990)); see also Tex. R. Evid. 401 (stating that
relevant evidence is evidence having any tendency to make the existence of a
fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence). 





[18]Rogers, 991 S.W.2d at 265.





[19]Mendiola, 21 S.W.3d at 285.





[20]See Tex.
Penal Code Ann.
'' 12.33, 49.08 (Vernon
2003); Hardie v. State, 588 S.W.2d 936, 938 (Tex. Crim. App. 1979).





[21]See Tex.
Penal Code Ann.
' 19.02(b) (Vernon 2003)
(stating the mental state requirement for murder).  





[22]Tyra v. State, 897 S.W.2d 796, 797
(Tex. Crim. App. 1995). 





[23]See Tyra, 897 S.W.2d at 797
(holding that driving an automobile constitutes the use of it and that driving
in a manner capable of causing death or serious bodily injury constitutes using
it as a deadly weapon); see also Mann v. State, 58 S.W.3d 132, 133 (Tex.
Crim. App. 2001) (Johnson, J., concurring) (reaffirming that Texas law
authorizes a deadly weapon finding in a DWI collision); Wiley v. State,
112 S.W.3d 173, 175 (Tex. App.CFort Worth 2003, pet. ref=d) (stating that
intermediate appellate courts are bound to follow the pronouncements of the
court of criminal appeals).