Opinion issued November 14, 2002



 







In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00276-CR






DONALD EUGENE MACKEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 810934






O P I N I O N


A jury found appellant, Donald Eugene Mackey, guilty of capital murder
committed during a robbery. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon
1999). The jury found that appellant would not constitute a continuing threat to
society, which required the trial court to assess punishment at life in prison. See
Tex. Code Crim. Proc. Ann. art. 37.071, § 2(g) (Vernon Supp. 2002). We
address (1) whether the evidence is legally sufficient to prove appellant
intentionally caused the victim's death; (2) whether the trial court erred by not
submitting a felony-murder instruction that applied the law to the facts of the case;
and (3) whether any error in excluding testimony concerning a videotape, found in
the victim's residence, depicting interracial sex, was harmful. We affirm.

Facts


 In 1996, Vicky Cooper hired appellant to transport cars between automobile
dealers and auctions. Besides her driving business, Cooper was also responsible
for a ministry, the purpose of which was to assist those in need. Cooper's efforts
within the ministry helped appellant get into a work program. Also, Cooper
personally assisted appellant in purchasing a car, with the agreement that appellant
would repay her for the car.

 Cooper's daughter, C.E., assisted in both the business and the ministry. 
Besides working together, the mother and daughter were neighbors; the two lived
in separate residences at 88 White Road in Harris County.

 Cooper found C.E. naked, bloody, surrounded by vomit, and near death in
C.E.'s home on the morning of March 5, 1999. C.E. was transported to Hermann
Hospital and was in a coma when she was admitted. An examination revealed she
had suffered a gunshot wound to the palm and little finger of her left hand. 
Gunpowder residue indicated the back of C.E.'s left hand had been in contact with
the barrel of a gun when it was fired. She also had a puncture gunshot wound in
the back of her head, forcing a piece of bone into her brain and causing bleeding. 
A CAT scan showed that she had brain damage and was experiencing pressure
from the fluid around her brain.

 A nurse at Hermann Hospital performed a rape-kit examination. The nurse
collected pubic hair and debris from under C.E.'s fingernails. The nurse also
performed rectal and vaginal swabs. DNA analysis determined that appellant's
semen and spermatozoa were on the vaginal smear.

 C.E.'s condition improved briefly, but because she had breathed vomit into
her lungs, her lungs became inflamed, impairing her breathing. C.E. died
approximately one month later in the hospital. She never regained consciousness
to the degree necessary to have a conversation with anyone. The cause of death
was the gunshot wound to her head.

 According to the medical examiner, it was possible for only one bullet to
have caused the injuries to C.E.'s hand and head. Both the State's explanation of
the injury and appellant's statement about it were consistent with the injuries. The
State argued at trial that the wound resulted when C.E. was in a submissive
position with her hand on the back of her head. The State insisted that the
evidence of contact between C.E.'s hand and the gun's barrel indicated appellant
had placed the gun against C.E.'s hand as he fired. Appellant's statement
indicated C.E. struck the gun and caused him to fire the round that entered her
hand and head.

 An investigation of C.E.'s home on March 5 revealed that an exterior screen
had been removed from a porch window. Another window, between the porch
area and the residential portion of the home, had been broken. Besides the broken
window in the porch area, the residence did not appear to have been disturbed. A
crime-scene investigator found a nine-millimeter bullet on the bed and a nine-millimeter casing under the bed. Additionally, the crime-scene investigator
secured a bra, a t-shirt, and two videotapes from the residence. C.E. typically
wore several pieces of jewelry, which were missing. Her billfold was also
missing.

 Elsewhere that morning, appellant was arrested by a Fort Bend Independent
School District police officer for truancy. After he was processed, appellant
spontaneously told the police officer that he had raped and robbed a white woman
at 88 White Road and that she might be dead. Appellant also told the officer that
he had tossed the weapon in the bayou somewhere off Almeda Road. 

 On the evening of March 5, appellant told a Harris County Sheriff's Officer
that "those people did nothing but help him." On March 6, appellant gave the
officer a written statement, in which he told the officer the following:

 I went to the front door and [C.E.] opened the door for me. She and I
drank ice tea in the living room and we chit chat like we always do. 
We tossed it up. That just means to kick it and chill. Then we went
to the bedroom and [had] sex like we always do. She is always trying
to hurry up before her mother comes home. I then got dressed. I
asked [C.E.] for some money, but she said she was tired of giving me
money. I then smoked half a stick I had in the car and tripped out. I
broke the window of her bedroom with the pistol. I did that just to
scare her. She said I needed to stay off that shit. I climbed in through
the window. She was screaming that I should stop the nonsense. I
said, '[C.E.], just give me the money.' I had the gun pointed at her
and she hit my hand with her hand and the gun went off. I had my
finger on the trigger. I got scared and went out the door by the
kitchen through the screen door. I then drove off in my car on
Almeda towards downtown. I threw the pistol out of my car into the
bayou by Hermann Park on Almeda. The gun was a black 9
millimeter. I drove to where I parked my car.


Based on this statement, the police located appellant's car. Inside the car, the
crime-scene investigator found a pistol holster and what appeared to be a spot of
blood.

Intentional Killing

In his first point of error, appellant contends that the evidence is legally 
insufficient to establish beyond a reasonable doubt that he intentionally caused the
death of C.E. because the circumstances give equal or near equal support to a
theory of an accidental or unintentional shooting. The standard of review for legal
sufficiency is to view the evidence in the light most favorable to the conviction
and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Garrett v. State, 851 S.W.2d 853, 857
(Tex. Crim. App. 1993).

Appellant contends that the evidence is not legally sufficient to show that
he intentionally caused the death of C.E. because there are other plausible theories
about precisely how the fatal shot was fired. Appellant argues that, because the
pathologist agreed that more than one scenario could explain C.E.'s injuries, and
because the autopsy findings support either theory, the jury could not have found
beyond a reasonable doubt that the appellant intentionally caused C.E.'s death. 

Appellant relies on Wright v. State, 603 S.W.2d 838 (Tex. Crim. App.
1980). The Wright court held that, when circumstances do not exclude every other
reasonable hypothesis except guilt, the conviction cannot be sustained. Id. at 841. 
The Texas Court of Criminal Appeals has long since abandoned this "other
reasonable hypothesis" construct, however. See Geesa v. State, 820 S.W.2d 154,
161 (Tex. Crim. App. 1991), overruled on other grounds by Paulson v. State, 28
S.W.3d 570 (Tex. Crim. App. 2000). When faced with a record that supports
conflicting inferences, we must presume that the trier of fact resolved such
conflicts in favor of the conviction and must defer to that resolution. Matson v.
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); Tippitt v. State, 41 S.W.3d
316, 327 (Tex. App.--Fort Worth 2001, no pet.).

Appellant's written statement indicated that he pointed the gun at C.E.,
with his finger on the trigger, while he demanded that she give him money. Use of
a deadly weapon implies specific intent to kill, unless in the manner of use it is
reasonably apparent that death or serious bodily injury could not result. Godsey v.
State, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986). Testimony of the
pathologist at trial indicated that C.E. could have had her hand against the back of
her head in a submissive position and that the gun's barrel could have been in
contact with her hand when the weapon was fired. Further, appellant's statement
indicates that he quickly left the scene without rendering aid or making an effort to
get help for C.E. See Brooks v. State, 822 S.W.2d 765, 767 (Tex. App.--Houston
[1st Dist.] 1992) (immediately fleeing scene suggests guilty mind), pet. granted on
other grounds and cause remanded, 854 S.W.2d 659 (Tex. Crim. App. 1992);
Tezino v. State, 765 S.W.2d 482, 485 (Tex. App.--Houston [1st Dist.] 1988, pet.
ref'd) (failure to render aid known to be needed supports inference that injuries
were intentionally inflicted).

Viewing the evidence in the light most favorable to the conviction, any
reasonable trier of fact could have found appellant intentionally caused C.E.'s
death. We hold that the evidence is legally sufficient to support the jury's finding
that appellant intentionally caused the death of C.E. 

We overrule appellant's first point of error.

Jury Charge

 In his second point of error, appellant contends that the trial court
committed reversible error by not submitting a felony-murder instruction that
applied the law to the facts of the case. The jury charge read as follows: 


 A person commits the offense of felony murder if he commits
or attempts to commit a felony, other than manslaughter, and in the
course of and in furtherance of the commission or attempt, or in
immediate flight from the commission or attempt, he commits or
attempts to commit an act clearly dangerous to human life that causes
the death of an individual.


 Therefore, if you find from the evidence beyond a reasonable
doubt that on or about the 5th day of March, 1999, in Harris County,
Texas, the defendant, Donald Eugene Mackey, did then and there
unlawfully, while in furtherance of the commission of the felony of
robbery of [C.E.], or in immediate flight from the commission or
attempted commission of the felony of robbery of [C.E.], commit an
act clearly dangerous to human life that caused the death of [C.E.],
namely, by shooting [C.E.] with a deadly weapon, namely a firearm,
then you will find the defendant guilty of felony murder.


 Appellant proposed a jury instruction, which was denied, that contained the
following language: "committed an act clearly dangerous to human life that caused
the death of C.E., by pointing a loaded firearm at [her] and accidentally shooting
her, then you will find the defendant guilty of felony murder." Appellant then
suggested another jury instruction, which was also rejected, that contained the
following alternative language: "by unintentionally shooting C.E. with a deadly
weapon . . . ."

A jury charge is adequate if it contains an application paragraph that (1)
specifies all of the conditions to be met before a jury may convict under the
applicable theory; (2) authorizes the jury to convict under conditions specified by
other paragraphs of the charge, to which the application paragraph necessarily and
unambiguously refers; or (3) contains some logically consistent combination of
those paragraphs. Plata v. State, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996),
overruled on other grounds, Malik v. State, 953 S.W.2d 234 (Tex. Crim. App.
1997).

The jury charge contained abstract definitions for "attempt," "robbery,"
"deadly weapon," and "felony murder," which definitions comported with the
terms' statutory definitions. See Tex. Pen. Code Ann. §§ 1.07(a)(17), 15.01,
19.02(b)(3), 29.02 (Vernon 2001). The felony-murder application paragraph
unambiguously referred to those abstract definitions and specified the conditions
to be met to authorize a felony-murder conviction. Thus, the felony-murder
instruction was adequate. See Plata, 926 S.W.2d at 304.

Appellant argues that the application paragraph should have contained the
words "accidentally" or "unintentionally." The Texas Code of Criminal Procedure
prohibits the trial court from submitting a written charge to the jury that either
expresses an opinion as to the weight of the evidence or sums up testimony. Tex.
Code Crim. Proc. Ann. § 36.14 (Vernon 2001). A charge that assumes the truth
of a controverted issue is a comment on the weight of the evidence and is
erroneous. Whaley v. State, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). 
Appellant's requested application-paragraph language would have suggested to
the jury that the trial court thought appellant had accidentally or unintentionally
shot C.E. Appellant's mental state was a controverted issue to be resolved by the
jury, and appellant's requested charge language would have amounted to a
comment on the weight of the evidence. If submitted, appellant's proposed
language would have resulted in an erroneous charge.

Because appellant's requested instructions were not proper and the charge
given was adequate, the trial court did not err. Accordingly, we overrule
appellant's second point of error.

Exclusion of Testimony Concerning Videotapes

In his third point of error, appellant contends that the trial court erred in
excluding testimony concerning images of interracial sex on two videotapes found
in C.E.'s residence. Appellant asserts the testimony was relevant and would have
shown jurors that C.E. found the notion of sex between black men and white
women acceptable. Also, appellant believes this testimony would have created
some doubt about whether a rape had occurred. Appellant argues that the
exclusion was a constitutional error that denied him the right to put on a defense
and deprived him of a fair and impartial trial.


At trial, a Harris County Sheriff's deputy stated that two pornographic
videotapes were removed from C.E.'s home. Appellant's attorney asked, "What
did it [the tape] show?" The trial judge sustained the State's objection as to
relevance. Outside the presence of the jury, appellant made an offer of proof,
during which he asked the deputy, "What was the race of the male and what was
the race of the female?" The deputy went on to testify that the tape "starts out
with a black male and a white female."

Although we find the admissibility of the excluded testimony a close
question, we will address the issue of harmlessness as if it had been error for the
trial court to exclude the evidence. We must first determine whether the error is
constitutional or other error. 
A. Constitutional or Other Error

Appellant argues that the trial court's erroneous exclusion of this evidence
prevented appellant from effectively presenting a defense to the rape allegation
and thus amounted to a constitutional error. Appellant relies on Crane v. Kentucky
and Brazelton v. State. Crane, 476 U.S. 683, 106 S. Ct. 2142 (1986); Brazelton,
947 S.W.2d 644 (Tex. App.--Fort Worth 1997, no pet.).

In Crane, the defendant spontaneously confessed to murder after his arrest
for an unrelated offense. Id., 476 U.S. at 684, 106 S. Ct. at 2143. In a pretrial
hearing, the defendant moved to have the confession suppressed, alleging that the
confession had been coerced. Id., 476 U.S. at 684, 106 S. Ct. at 2143-44. The
trial court denied the defendant's motion. Id., 476 U.S. at 685, 106 S. Ct. at 2144. 
During trial, the trial court ruled that the defendant could not present evidence that
went to the voluntariness of the confession, as that issue had been previously
determined as a matter of law. Id., 476 U.S. at 686, 106 S. Ct. at 2144. In Crane,
the United States Supreme Court specified that evidence about the manner in
which a confession is obtained will often be germane to the confession's probative
weight. Id., 476 U.S. at 688, 106 S. Ct. at 2145. The Supreme Court reversed,
holding that the blanket exclusion of testimony concerning the circumstances of
the defendant's confession deprived the defendant of a fair trial. Id., 476 U.S. at
690, 692, 106 S. Ct. at 2146-47.

In Brazelton, the defendant was convicted of a state-jail felony for the
possession of marihuana. Id., 947 S.W.2d at 646. The defendant relied on the
defense of necessity, asserting that, in the midst of a heated custody dispute, she
was attempting to dispose of marihuana that her ex-husband had hidden in her
home. Id. at 647. The trial court excluded character evidence that the defendant
was not known to sell or use marihuana. Id. at 650. The Second Court of Appeals
held that "evidence that the appellant did not use or sell drugs is a pertinent trait
and an essential element" of the defense of necessity. Id. 


In both Crane and Brazelton, the excluded evidence deprived the defendant
of the ability to put on a defense. Appellant argues that one piece of excluded
evidence, which very indirectly indicates consent, deprived him of the ability to
put on a defense. We disagree. Appellant was not subjected to a "blanket
exclusion" that prevented him from putting on a defense, nor was the testimony an
"essential element" of the defense of consent. Therefore, Crane and Brazelton are
distinguishable.

The appropriate standard of review for determining whether an error is of 
constitutional magnitude was recently assessed by the Court of Criminal Appeals. 
Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). The court held "that
the exclusion of a defendant's evidence will be constitutional error only if the
evidence forms such a vital portion of the case that exclusion effectively precludes
the defendant from presenting a defense." Id.

In Potier, the trial court erroneously excluded, as hearsay, evidence that
further established the defendant's reasonable belief that he was acting in self-defense when he killed a neighborhood bully. Id. at 658, 665. The trial court
excluded testimony that "on the day of the shooting 'the whole neighborhood' told
[defendant] that the victim had come looking for him" and "that the victim was
trying to kill him." Id. at 665. The trial court also excluded testimony indicating
the victim had robbed the defendant two months before the homicide. Id. at 666. 
However, other evidence of the reasonableness of the defendant's belief that he
was acting in self-defense was admitted. Id. at 665. Testimony indicated that
everyone in the neighborhood was afraid of the victim and that, earlier in the day,
the victim had told the defendant that he was going to kill him. Id. Also, there
was testimony indicating that the victim had previously beaten up the defendant. 
Id. The Potier court concluded that the exclusion of the evidence was not
constitutional error because the defendant had not been prevented from presenting
a defense. Id. at 666.

 In the instant case, there was testimony indicating that there were no signs
of a struggle at C.E.'s residence: her t-shirt was neatly folded, and the broken
window was the only area of the house in disarray. The nurse who performed the
rape kit did not testify to any evidence of force. This evidence still allowed the
appellant to argue that C.E. had consented to sex. Unlike the excluded evidence in
Potier, which strongly indicated that the defendant had acted in self-defense, the
testimony here was, at most, a slight suggestion that the victim had approved of
interracial sexual relationships. If the exclusion of stronger defensive evidence
did not rise to constitutional error in Potier, then neither does the exclusion of the
weaker defensive evidence offered here. We conclude that any error in excluding
the testimony was not constitutional error.


B. Applying Other-Error Analysis

 Any other error that does not affect substantial rights must be disregarded. 
Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a
substantial or injurious effect or influence in determining the jury's verdict. King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); Beal v. State, 35 S.W.3d
677, 685 (Tex. App.--Houston [1st Dist.] 2000, pet. granted). To determine
whether the error had a substantial or injurious effect, the appellate court should
review the record as a whole. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim.
App. 2001). The review should include "everything in the record, including
testimony and physical evidence, the nature of the evidence supporting the verdict,
and the character of the error and its relationship to other evidence." Id. A
reviewing court should let a conviction stand if, after examining the record as a
whole, it has fair assurance the error did not influence the jury or had but a slight
effect. Id.

 Appellant asserts that the testimony would have created some doubt as to
whether a rape had occurred. The record contains appellant's conflicting
statements: one statement indicates that the sex was consensual, while the other
statement confesses to rape. The rape kit indicated that appellant had some sexual
contact with C.E., but there was no testimony from the nurse indicating that sex
was not consensual. With the abundance of contradictory or ambiguous evidence
that was admitted, it is doubtful that this single piece of testimony would have
caused the jury to conclude that the sex was consensual. This is especially true
because there was no way to know whose videotapes these were and whether C.E.
watched the videotapes voluntarily, if she even watched them at all. Even if the
jury had determined the sex was consensual, however, the evidence remained
overwhelming that appellant murdered C.E. in the course of robbing her. Thus,
after examining the record as a whole, we conclude that the error did not influence
the jury or had but a slight effect at the guilt stage. As for punishment, there can
be no harm at all because appellant received the minimum punishment for capital
murder, life in prison. Accordingly, we must disregard any error. See Tex. R.
App. P. 44.2(b).

 We overrule appellant's third point of error.


Conclusion

 We affirm the judgment of the trial court.

 




 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Price. (1)


Do not publish. Tex. R. App. P. 47.4.
1. The Honorable Frank C. Price, former Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.