Thomas PALERMO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–98–00339–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 13, 1999.

Brian W. Wice, Houston, for Appellant.

John B. Holmes, Keli Pool Roper, Houston, for Appellee.

Panel consists of Justices O'CONNOR, TAFT, and PRICE.*

## OPINION

TIM TAFT, Justice.

A jury found appellant, Thomas Palermo, guilty of murder and assessed punishment at 70 years in prison and a $10,000 fine. We address: (1) punishment stage complaints of improper prosecutorial argument which included commenting on appellant's failure to show remorse and inviting the jury to step into the shoes of the

---

victim's family; and (2) denial of cross-examination about the civil suit the victim's family filed against parties who owned the business premises where the offense occurred. We affirm.

## Facts

On December 10, 1996, Walter Berry (Berry) refused appellant's request to use a pay telephone. Appellant retrieved a pistol from his nearby van and shot Berry in the face at close range. Berry died as a result of the gun shot.

## Failure to Show Remorse

In his first and second points of error, appellant contends the trial court erred by denying appellant's motion for mistrial during the punishment phase of the trial when the prosecutor argued the appellant failed to show remorse.

### A. Evidentiary Background

During the punishment phase, the State presented testimony from Terry Proctor. Proctor had owned a car wash that he leased to appellant from 1978 until 1986. During that period, appellant told Proctor several times that appellant had shot people, but never anyone who did not need to be shot. Each time appellant made this statement to Proctor, appellant laughed.

Appellant presented testimony during the punishment phase from Houston Police Officer Michael Sampson and Dr. Ramon Laval. Officer Sampson testified, on cross-examination, that when appellant was being questioned after Berry was murdered, appellant's biggest concern was that he needed to hurry home to be sure nothing had happened to his van or expensive camera equipment. Dr. Laval is a clinical psychologist whom Harris County employs to perform competency and sanity evaluations of persons charged with criminal offenses. Dr. Laval testified, on cross-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

examination, that when he asked appellant about Berry's murder, appellant replied he did not remember doing anything and he knew he did not do anything.

## B. Argument and Objections

During the punishment phase of the trial, the prosecutor made the following arguments and appellant made the following objections:

[The State] I brought you Terry Proctor for—and you can give as much weight or no weight to what he had to say as to Mr. Palermo's general character. I never shot anyone who didn't need it. Even if you didn't, it is what he said. Mr. Proctor told you that he had said it more often and Mr. Proctor figured this is the time for me to terminate our relationship. You think another thing that you may take and figure out punishment—remorse. Is there any display of remorse?

[Appellant] Objection. Comment on defendant's failure to testify.

[The Court] Sustained.

[Appellant] Ask the jury be instructed.

[The Court] Jury will be instructed at this time to disregard the last statement of the prosecutor, not consider it for any purpose.

[Appellant] Move for mistrial.

[The Court] That's denied.

[The State] You look at the evidence that's presented from Officer Sampson, a doctor of law[1] [sic] brought to you by Mr. Palermo. They were defense witnesses. They told you what he said after the killing. They told you what Mr. Palermo said after he shot Mr. Berry in the head. And you can judge for yourself, ladies and gentlemen, and this is where common sense comes in. Is there any remorse in what Mr. Palermo told—

[Appellant] Your Honor, I object again.

[The Court] Grounds?

[Appellant] This is—any reference to failure to display remorse.

[The Court] Sustained.

[Appellant] Ask the jury be instructed.

[The Court] The jury will disregard the last statement of the District Attorney.

[Appellant] And move for mistrial on grounds of repetition, reinforced harm.

[The State] Your Honor—

[The Court] It is denied.

## C. Propriety of Argument

The United States Constitution, the Texas Constitution, and article 38.08 of the Texas Code of Criminal Procedure prohibit the State from commenting on a defendant's failure to testify. To determine whether the State has violated this prohibition during closing argument, we must view the State's argument from the jury's perspective to determine whether the argument was "manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify." *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex.Crim.App.1995). When the State's closing argument during the punishment phase of the trial concerns whether a defendant feels remorse for his conduct, the issue becomes whether the jury would necessarily and naturally interpret the State's argument as a comment on the accused's failure to testify, or merely as a request that the jury evaluate the evidence presented to determine if it shows the defendant's remorse. *Moore v. State*, 822 S.W.2d 355, 357–58 (Tex.App.—Houston [1st Dist.] 1992), *pet ref'd*, 849 S.W.2d 350 (Tex.Crim.App.1993).

1. Apparently the prosecutor was referring to Dr. Laval.

Appellant complains of two arguments. In the first, the State prefaced its argument by discussing Proctor's testimony concerning appellant's statement, prior to the murder, that he "never shot anyone who didn't need it." The second argument addressed Officer Sampson and Dr. Laval's testimony concerning appellant's comments after the murder. We conclude that these arguments were merely requests by the State that the jury evaluate whether the evidence presented showed that appellant felt remorse. The arguments were not attempts to infer lack of remorse from appellant's failure to testify. Therefore, the trial court would not have erred had it overruled appellant's objections. Having given appellant more relief than required, by sustaining appellant's objections and instructing the jury to disregard, the trial court certainly did not err by denying appellant's motions for mistrial.

We overrule appellant's first and second points of error.

### Placing Jurors in Shoes of Victim's Family

In his third point of error, appellant contends the trial court erred by denying appellant's motion for mistrial during the punishment phase of the trial when the prosecutor urged jurors to place themselves in the shoes of Berry's parents.[2] In his fourth point of error, appellant argues the trial court erred by overruling appellant's later objection to the State's continuing the same improper jury argument.

#### A. Evidentiary Background

Berry's father testified during the punishment phase of the trial. He told the jury he was Pastor at a Baptist Church in Baytown. He also stated that he and Berry were neighbors and fellowshipped together daily. On December 11, 1996, Berry's father was awakened at 1:30 a.m. by the sound of his wife's screaming over the phone. She was speaking to a person from the city morgue who called to notify Berry's parents that Berry was dead. Berry's father stated that Berry's death has had a devastating physical and spiritual effect. There is not a day or an hour that passes without his thinking about his son.

#### B. Argument and Objections

During the punishment phase of the trial, the prosecutor made the following arguments and appellant made the following objections:

> [The State] When you look at the date, ladies and gentlemen, December 10th, what do you think Christmas would be like forever for the Berry family? When other people are making out their lists and what to buy your loved ones for Christmas, the Berry family will be placing a wreath of flowers around Walter's grave. Think about how Mr. Berry got the phone call at 1:30 in the morning. He gets the call from the City Morgue as a parent. How he took it—

> [Appellant] Your honor, I have to object. Asking the jury to place themselves in the complainant's shoes.

> [The Court] Sustained.

> [Appellant] Ask the jury to be instructed.

> [The Court] Disregard that portion.

> [Appellant] Move for mistrial.

> [The Court] That's denied.

> [The State] Can you imagine later how a parent fears a phone call such as that?

> [Appellant] Renew the same objection.

> [The Court] As to that phrase, that's denied.

2. Appellant's objection complained that the prosecutor asked the jurors to place themselves in the shoes of the victim, but the complaint is obviously directed to the prosecutor asking the jurors to place themselves in the shoes of the victim's family.

## C. Propriety of State's Argument

█ Proper jury argument must fall within one of the following categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments by opposing counsel; and (4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App. 1996). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the record as a whole. *Id.* at 61–62. To constitute reversible error, the argument must be extreme or manifestly improper; violative of a mandatory statute; or have injected new facts, harmful to the accused, into the trial proceedings. *Id.*

Appellant claims the argument asking members of the jury to place themselves in the shoes of the victim's family is improper because it is based upon matters outside the record and asks the jurors to abandon their objectivity. We agree. The State responds that it is permitted to personalize the circumstances of a crime, when making a plea for law enforcement. We agree with this principle also. This case illustrates the differences between proper and improper arguments that ask jurors to place themselves in the shoes of the victim or the victim's family.

### 1. First Argument

█ The first portion of the prosecutor's first argument asked jurors to think about what Christmas would be like, forever, for the family of a victim murdered on December 10th. While the prosecutor's argument was at least tangentially linked to evidence establishing that the offense was committed near Christmastime and the close relationship between the victim and his father, it strayed beyond the evidence, even beyond reasonable deductions from the evidence, when it spoke of placing wreaths on the victim's grave. The prosecutor's argument was nevertheless not the type of argument that asks jurors to abandon their objectivity. For example, it was

not the type of argument this Court condemned in *Boyington v. State,* when the prosecutor asked jurors to put themselves in the place of the victim's family by assessing the punishment they would assess if it had been their own family that had been firebombed in the middle of the night. 738 S.W.2d 704, 709 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

█ The second portion of the prosecutor's first argument asked the jurors to think about how the victim's father received the telephone call at 1:30 in the morning from the city morgue, and how, as a parent, this call affected him. This argument merely asked the jury to consider one of the many effects of appellant's crime, as shown by the evidence. In another point of error, appellant acknowledges that victim impact evidence is proper. *See Stavinoha v. State*, 808 S.W.2d 76, 78–79 (Tex.Crim.App.1991) (impact on victim and his mother); *Jones v. State*, 963 S.W.2d 177, 182–83 (Tex.App.—Fort Worth 1998, pet. ref'd) (impact on victim's family); *Brooks v. State*, 961 S.W.2d 396, 397, 400 (Tex.App.—Houston [1st Dist.] 1997, no pet.) (impact on victim's sister). Asking jurors to consider what a victim experienced during the crime, or the effects of a crime on the victim or the victim's family members naturally requires jurors to place themselves in the shoes of the victim or the victim's family. The prosecutor's argument is proper as long as it is based on the evidence and reasonable deductions from the evidence, rather than sheer conjecture.

When the trial court sustained appellant's first objection, but instructed the jury to disregard only "that portion," we read the trial court's ruling as sustaining an objection to the first portion of the first argument conjecturing about the Berry family's feelings and actions at future Christmases. We do not read the trial court's ruling as pertaining to the second portion of the first argument concerning the telephone call to Berry's parents, which was based squarely on the evidence.

■ We conclude that the trial court properly sustained appellant's objection, properly instructed the jury to disregard a portion of the argument, and properly denied the appellant's motion for mistrial because the reference to appellant's having forever spoiled Christmas for the victim's family was not so inflammatory that an instruction to disregard could not have cured any harm. Accordingly, we overrule appellant's third point of error.

## 2. Second Argument

■ The prosecutor's second argument again asked the jurors to imagine later how a parent fears a telephone call in the middle of the night, reporting the death of a child. The trial court apparently overruled appellant's objection on the ground that the prosecutor was continuing the proper portion of her first argument. We are not sure what the prosecutor meant by her second argument, but she seemed to be inviting jurors to consider how a parent, who had once received a telephone call notifying of a child's death, would fear receiving another similar call. If that was the purpose of the argument, the prosecutor asked the jurors to imagine a future event in an effort to evoke speculative fears. As with the conjecture about future Christmases, the prosecutor strayed beyond the evidentiary basis in the record, namely, the phone call notifying Berry's parents of his death. We conclude, therefore, that the trial court erred by overruling appellant's objection.

## D. Harmless Error Analysis

■ In *Mosley v. State*, the Court of Criminal Appeals addressed how an appellate court should review a trial court's erroneous failure to sustain a defendant's objection to an improper argument by the State. 983 S.W.2d 249, 259 (Tex.Crim. App.1998). Drawing on federal caselaw, the *Mosley* Court reviewed the trial

court's error in light of the following factors:

(1) Severity of the misconduct (the magnitude of the prejudicial effect caused by the State's improper jury argument);

(2) Measures adopted to cure the misconduct (the effectiveness of any cautionary instruction given by the trial court); and

(3) The certainty of conviction absent the misconduct (the strength of the evidence supporting the defendant's conviction).[3]

*Id.*

In the first place, the prosecutor's argument was difficult to comprehend. A jury would probably glean only that a parent would fear a telephone call informing of the death of one's child. We consider this argument to be mildly prejudicial, rather than severely prejudicial. Despite the trial court's failure to take measures to cure whatever mild effect this argument might have had on the jury, we conclude the argument would not have had any appreciable impact on the jury's consideration of appellant's punishment. Therefore, we overrule appellant's fourth point of error.

### Prior Civil Trial

In his fifth point of error, appellant contends the trial court erred by denying him the opportunity to cross-examine Berry's father during the punishment phase of the trial concerning a civil suit that Berry's family filed against the car wash where the crime occurred and against the floor company next door. Appellant argues that evidence of the collateral civil suit would have impeached the victim impact testimony from Berry's father by permitting appellant to suggest to the jury that Berry's father recognized that the car wash and the floor company were also "morally blameworthy" for his son's death. By

---

**3.** Because the argument in this case occurred during the punishment stage, the federal standard must be adapted accordingly.

spreading the blame, appellant claims the jury might have assessed a reduced punishment.

 The standard for reviewing a trial court's evidentiary rulings is abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). If the trial court has operated within the boundaries of its discretion, an appellate court may not disturb the trial court's ruling. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim.App.1990).

Courts have permitted defendants to cross-examine complaining witnesses concerning collateral civil suits. *See, e.g., Shelby v. State*, 819 S.W.2d 544, 545 (Tex. Crim.App.1991); *Cox v. State*, 523 S.W.2d 695, 700 (Tex.Crim.App.1975); *Blake v. State*, 365 S.W.2d 795, 796 (Tex.Crim.App. 1963); *Branford v. State*, 165 Tex.Crim. 314, 306 S.W.2d 725, 726 (1957). In these cases, however, the following common characteristics were present: (1) the evidence was presented during the guilt-innocence phase of the trial; (2) the witnesses were testifying to facts that tended to establish the accused's culpability; (3) the civil suit had been brought against the defendant; and (4) the civil suit was still pending. *See id.* The relevancy of the evidence derived from its impeachment value to show possible motive to give false testimony based on the desire of the witness to recover damages in the collateral civil suit.

 This rationale does not apply here. The jury had already found appellant guilty; Berry's father's testimony did not concern appellant's culpability for the murder, but a civil suit against parties other than appellant; and the Berry family had already received a settlement from those other parties. Therefore, this evidence was not admissible for the usual impeachment purpose of showing bias.

 Appellant further argues that evidence of filing the civil suit at least showed the victim's family believed that persons other than appellant were also morally blameworthy for their son's death. Appel-

lant claims this diminished his moral blameworthiness. Appellant even speculates that the businesses in question would not have settled with the victim's family unless the businesses acknowledged some responsibility for Berry's death.

 Nothing in the record shows the basis for the civil suits against the businesses, or the terms of the settlements. Nevertheless, to the extent appellant attempted to diminish his blameworthiness by spreading blame to businesses in the neighborhood of the offense, we reject his premise. Codefendants are generally not permitted to attempt to diminish their blameworthiness by introducing the details of criminal suits against their codefendants. *See, e.g., Stewart v. State*, 703 S.W.2d 745, 750 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd) (trial court properly excluded evidence that codefendant received probation). The relevance of the civil culpability of a business is obviously less than the criminal culpability of a codefendant. Accordingly, the trial court did not abuse its discretion by excluding the evidence.

We overrule appellant's fifth point of error.

### Conclusion

We affirm the judgment of the trial court.