Opinion issued June 5, 2003


 












In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00130-CR






FREDRIC QUINTON STACY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 873924











MEMORANDUM OPINION

 Fredric Quinton Stacy, appellant, was found guilty of murder. (1) The trial court
assessed punishment at 35 years' confinement and a fine of $50. In three points of
error, appellant argues that (1) the trial court erred in not allowing evidence of the
victim's prior arrest for assault to be presented to the jury; (2) the evidence was
factually insufficient to support the jury's rejection of his defense that he committed
the act in self-defense; and (3) the trial court erred in denying his request for a
mistrial based on an improper comment by the prosecutor regarding appellant's right
to remain silent at the punishment phase. We affirm.

Facts Discovery of the Body

 On March 8, 2001, appellant was out with friends at a gentlemen's
entertainment club and at a pool hall. While out with his friends, appellant met
Marquetta Hogan. Hogan propositioned appellant and then took him to her motel
room.

 On March 9, 2001, Maria Garcia, a housekeeper at the Roadrunner Inn,
knocked on the door to room 271 so that she could clean it. When no one answered
her knocks, she opened the door and saw a dead body on the floor near the bathroom. 
She did not go into the room because there was a strong smell and blood was all over
the wall. Garcia notified the manager of the motel, who called the Houston Police
Department.

 The Investigation

 Officer Gandingco was dispatched to the motel. The manager opened the door
to room 271, and Gandingco found the body of a woman, lying face down in the
walkway between the bed and the bathroom. The dead woman was later identified
as Marquetta Hogan. Mark Holbrook, a Houston Crime Scene Investigator, arrived
on the scene to photograph, videotape, and diagram the scene. Holbrook rolled
Hogan's body over and saw smeared blood on her arms and multiple lacerations and
injuries to her face. Holbrook found blood on the vanity countertop; a large amount
of blood spatter and smeared blood on the walls; diluted blood on the bathroom floor,
sink, and bathtub; and feces on the bathroom floor, the closet walls, smeared on a
wall, and piled on the carpet. Holbrook also found a pair of blunt-ended, blue-handled scissors in a closed position; a purse with no wallet or identification; and a
prescription bottle in Hogan's name.

 Mike Walker, a blood spatter expert with the Houston Police Department
Crime Scene Unit, testified that the blood spatter evidence in the hotel room was
inconsistent with a self-defense theory, as advanced by appellant. The blood spatter
evidence indicated that the assault on Hogan started near the entrance and led into the
bathroom near the vanity mirror and cabinet; it did not support a theory that the
assault began at the foot of the bed. Walker also testified that, in his opinion, there
were a minimum of 10 blows to Hogan.

 The medical examiner, Dr. Paul William Shrode, performed an autopsy on
Hogan to determine the cause and manner of her death. Shrode stated that most of
the injuries to Hogan were within the hairline, requiring that her scalp be shaved. All
of Hogan's injuries were lacerations as opposed to cuts. Cuts are caused by sharp
objects. Lacerations are caused by blunt objects tearing the skin. Hogan also had
deep bruises on her arms and back and a stab wound, consistent with a pair of
scissors, on her arm. In Shrode's professional opinion, the blunt-ended scissors found
at the scene could not have made the stab wound. Hogan had a rug burn behind one
ear; the other ear was torn almost completely through; and she had at least 12
lacerations to the scalp. Shrode testified that he could not see how the 12 lacerations
to the scalp could have been caused by only three blows, as testified to by appellant. 
Shrode determined that Hogan's neck had not been broken. The cause of death was
multiple blunt cranial, facial, and back trauma. Shrode testified that Hogan was 64
inches in length, which means that she was five feet, four inches tall.

 During the investigation, Waymond Allen of the Houston Police Department 
was contacted by appellant. Appellant met with Allen at the police department. 
Allen showed appellant a picture of Hogan, and appellant said he had met her on
March 8, 2001, at 4 p.m. at a Shell service station. Hogan solicited appellant for sex. 
Appellant and Hogan went to her motel room where she gave him oral sex for $30. 
Appellant took a shower and then met up with friends at a local pool hall,
Cornbread's, went to Babes, a gentlemen's entertainment club, and then returned to
Cornbread's. Appellant never mentioned that Hogan had assaulted him. 

 Appellant's Friends' Testimony

 Khesanh Mattyre testified that he joined appellant and Kenneth Howe at Babes
around 2 a.m. on March 9, 2001, and then went to Cornbread's. While they were
playing videogames, Hogan approached them. Appellant left with Hogan. 

 Appellant arrived at Mattyre's house at 6 a.m. on March 9, 2001, breathing
hard. Mattyre asked appellant what was wrong, and appellant replied that Hogan had
tried to rob him and that he had killed her. Mattyre noticed that appellant had a
scratch above his eye, small scratches on his face, blood in one of his ears, and blood
on his box of cigarettes. Appellant told Mattyre that Hogan had come at him with
scissors and that he picked up a pipe and went "blank." 

 Appellant told Mattyre what had happened with Hogan. He said that before
performing oral sex, Hogan asked him to clean up. Appellant cleaned himself in the
bathroom and when he returned to the main area, Hogan was going through his
wallet. Appellant said he hit Hogan three times, then blacked out. Appellant took a
shower once he came to because he was covered in blood, and when he got out of the
shower, Hogan was gurgling. Appellant put the weapon, a wooden pipe with a metal
end, in a bag and was going to get rid of it. Mattyre testified that he did not see any
injuries on appellant that could have been caused by the blunt-ended, blue scissors
found in the motel room.

 Brandi McClain heard from appellant around 6 or 7 p.m. on March 9, 2001.
Appellant told McClain that he had done something bad. On March 10, 2001,
McClain saw a newspaper report about Hogan's death and asked appellant if he knew
anything about it. Appellant told McClain that he went to the room with Hogan; he
took a shower; when he got out of the shower Hogan was going through his wallet;
when he confronted Hogan she went crazy and came at him with scissors, saying she
was going to kill him; he blacked out; when he recovered from his black out, he was
lying on the floor covered in blood, and Hogan was dead. Appellant said he had hit
Hogan numerous times over the head. Appellant told McClain that the weapon he
used had belonged to her; he had taken it from her storage unit when she moved; and
he had hidden the weapon in his attic. Appellant told McClain that he had broken
Hogan's neck "because she wouldn't stop moaning and she wouldn't die."

 Appellant also told Kenneth Howe about what happened in the motel room.
Appellant told Howe that he killed Hogan in self-defense; that Hogan had come at
him with a pair of scissors, so he picked up a pipe and hit her; and that he had blacked
out and did not remember any more details. Appellant told Howe in a later
conversation that he had broken Hogan's neck because she was moaning. Appellant
also told Howe that his hands hurt from hitting Hogan so many times. 

 Appellant's Testimony

 Appellant testified that once he and Hogan were in the motel room, she asked
him to clean up. Appellant cleaned up, and when he returned, Hogan was going
through his wallet. Appellant asked what she was doing and grabbed the wallet from
her. Appellant testified that Hogan "los[t] it" after he took his wallet from her, and
she started hitting him and cursing at him. He testified that he pushed her off several
times, but never thought to leave. He testified that he was scared and that he wanted
to get out of the motel room. He reached down to pick up the pipe that he had
brought with him for protection. As he looked up from picking up the pipe, he saw
Hogan coming at him with scissors. She told him, "I'm going to kill you, mother
******." Appellant began hitting Hogan to prevent her from stabbing him. 
Appellant said he did not remember much more about the incident. When he came
to, appellant was lying on the ground near the bathroom and Hogan's dead body,
covered in blood. He tried to clean himself off, grabbed his clothes, took his socks
off and put them in a bag, and left the motel room.

 On cross-examination, appellant testified that he threw the bag and the pipe
away in a dumpster near his house. He admitted that the story he told Allen about
meeting Hogan at a Shell service station was a lie. He testified that he did not hear
Hogan breathe again once he came to, and he never wiped anything down. He did not
remember how many times he had hit Hogan or where he had hit her.Discussion

 Evidence of Victim's Prior Arrest

 In his first point of error, appellant argues that the trial court erred in excluding
evidence of the victim's prior arrest for assault in order to show that she was the first
aggressor and also that he was afraid for this life. The trial court initially found the
evidence relevant and admissible until Allen, the witness presenting the evidence,
spoke with the prosecutor during a break. After the break, Allen concluded that the
victim had not been convicted of the assault, whereas earlier he had testified that she
had been convicted. The State argued that the evidence of the arrest should be
excluded because no one had information about whether there was a conviction or
what the circumstances were surrounding the incident. Appellant argued that the
victim's past charge of assault was evidence that she was the first aggressor on the
night she was killed. The trial court sustained the State's objection and excluded the
testimony. Appellant did not attempt to re-offer the evidence at a later point in the
trial.

 A trial court's decision to admit or exclude evidence is reviewed under an
abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). We will not reverse a trial court's ruling unless that ruling falls outside the
zone of reasonable disagreement. Id. 

 A defendant in a homicide prosecution who raises the issue of self-defense may
introduce evidence of the deceased's violent character. Tex. R. Evid. 404(a)(2); Tate
v. State, 981 S.W.2d 189, 192-93 (Tex. Crim. App. 1998); Thompson v. State, 659
S.W.2d 649, 653 (Tex. Crim. App. 1983). Specific, violent acts of misconduct may
be admitted to show the reasonableness of the defendant's fear of danger, or to show
that the deceased was the first aggressor. Torres v. State, 71 S.W.3d 758, 760 (Tex.
Crim. App. 2002). But specific acts are admissible only to the extent that they are
relevant for a purpose other than character conformity. Id. Before a specific, violent
act is introduced into evidence, there must be some evidence of a violent or
aggressive act by the deceased that tends to raise the issue of self-defense and that the
specific act may explain. Id. at 761.

 When the victim's acts of violence are offered to show that the deceased was
the aggressor, the witness must know about the prior acts, but the defendant himself
need not have had knowledge of the violent acts at the time of the homicide. Lowe
v. State, 612 S.W.2d 579, 581 (Tex. 1981); Stone v. State, 751 S.W.2d 579, 585 (Tex.
App.--Houston [1st Dist.] 1988, pet. ref'd). When evidence of the victim's character
is offered to show that the defendant killed the decedent because he reasonably
believed his life to be in danger, however, the defendant must first establish that he
was aware of the decedent's violent character. Beecham v. State, 580 S.W.2d 588,
590 (Tex. Crim. App. 1979). His knowledge of the deceased's aggressive nature may
be from personal knowledge or from hearsay. Dixon v. State, 634 S.W.2d 855, 857
(Tex. Crim. App. 1982). If other acts of violence directed toward third persons are
offered to show the reasonableness of the defendant's claim of apprehension of
danger, it must be shown that the acts of violence were known to the defendant at the
time of the homicide. Id.

 Here, appellant was seeking to introduce the evidence of Hogan's arrest for
assault as proof that Hogan was the first aggressor and also to show that appellant
feared for his life. At the time the trial court refused to allow Allen's testimony
regarding the victim's reputation for being a troublemaker, there had been testimony
from appellant's friends that he had told them that Hogan had tried to kill him with
a pair of scissors, but there was no information regarding the circumstances
surrounding Hogan's arrest for assault. The report of the arrest gave no details about
any specific act of violence; nor did Allen have personal knowledge of any specific
act of violence by Hogan. Thus, appellant did not establish the necessary predicate
for the admissibility of the arrest to show that Hogan was the first aggressor--Allen's
knowledge of a specific violent act by Hogan. Nor was there any evidence that, at the
time of the homicide, appellant knew about the prior arrest or any underlying specific
act of violence by Hogan, as required to show that appellant believed his life was in
danger. Therefore, the evidence of Hogan's arrest for assault would not have
explained appellant's need for self-defense, but would have merely demonstrated
character conformity.

 The trial court's decision to exclude the evidence was not an abuse of
discretion. 

 We overrule appellant's first point of error.

 Factual Sufficiency

 In his second point of error, appellant argues that the evidence was factually
insufficient to prove that he did not act in self-defense. We interpret his point of error
to mean that the evidence was factually insufficient to support the jury's rejection of
his defense that he killed Hogan in self-defense.

 In reviewing factual sufficiency, we examine all the evidence neutrally and ask
whether proof of guilt is so obviously weak as to undermine confidence in the jury's
determination or so greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim.
App. 2003); King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000); Valencia v.
State, 51 S.W.3d 418, 423 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd). If there
is probative evidence supporting the verdict, we must avoid substituting our judgment
for that of the trier-of-fact, even when we disagree with the determination. King, 29
S.W.3d at 563. The trier-of-fact is the sole judge of the weight and credibility of the
witness's testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 A person commits murder if he intentionally or knowingly causes the death of
an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). A person is
justified in using force in self-defense when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other's use or
attempted use of unlawful force. Id. § 9.31(a). The use of deadly force is justified 
(1) if a person is justified in using force against another in self-defense, (2) if a
reasonable person in his situation would not have retreated, and (3) when and to the
degree he reasonably believes the deadly force is immediately necessary to protect
himself against the other's use or attempted use of deadly force. Id. § 9.32(a). 

 The defendant has the initial burden of producing some evidence to justify
submission of an instruction regarding self-defense. Tidmore v. State, 976 S.W.2d
724, 729 (Tex. App.--Tyler 1998, pet. ref'd). The State then has the burden of
persuading the jury beyond a reasonable doubt that the defendant did not act in self-defense. Id. Although the State has the burden of persuasion, it does not have the
burden of affirmatively refuting self-defense. Id.

 Here, appellant testified that he hit Hogan in self-defense because he was afraid
for his life. No one testified that Hogan did not attack appellant; rather, three of
appellant's friends testified that appellant told them she came at him with a pair of
scissors. Allen testified that Hogan had been arrested for disorderly conduct and
public intoxication. Allen also testified that the security guard at the Road Runner
Inn had been threatened by Hogan.

 The jury also heard evidence, however, that appellant had been with Hogan the
night she was killed and that he hit her, of his own admission, at least three times. 
Shrode testified that, in his professional opinion, Hogan's injuries could not have
been caused by only three blows and that there were at least 12 lacerations to her
scalp. Shrode further went into complete and graphic detail of Hogan's extensive
injuries. The jury also heard from three of appellant's own friends about what
appellant, himself, had told them about what happened the night Hogan was killed. 
Two of the three testified appellant told them he killed Hogan as she lay on the floor
covered in blood because "she wouldn't stop moaning and she wouldn't die." 
Walker, the blood spatter expert, testified he was not in the room when Hogan was
killed, so he could not say for certain that Hogan did not attack appellant first. 
However, Walker testified that the blood spatter did not support appellant's theory
of self-defense.

 Because the jury, as trier-of-fact, is the sole judge of the weight and credibility
of the witness testimony, and because, on a neutral review of the evidence, the proof
supporting the jury's rejection of appellant's defense of self-defense was not so
obviously weak as to undermine confidence in the jury's determination, or so greatly
outweighed by contrary proof as to indicate that a manifest injustice occurred, we find
that the evidence was factually sufficient to support the jury's rejection of appellant's
defense of self-defense.

 We overrule appellant's second point of error.

 Improper Jury Argument

 In his third point of error, appellant argues that the prosecutor commented on
his failure to testify during the punishment phase of his trial, violating his Fifth
Amendment right not to testify and directly violating article 38.08 of the Texas Code
of Criminal Procedure. In closing argument, addressing the defense of sudden
passion, the prosecutor stated: 

 The other thing you need to remember about that, is that the burden is
on them. It is not on me, it is on them to show you that that's what
happened. He is still maintaining that he didn't even intend to kill her. 
But you're, by your verdict, you said he intentionally and knowingly
caused her death. He can't even accept that now.

 Defense counsel objected to any comment about the witness's not testifying at
the punishment stage of the trial. The trial court instructed the jury to "not consider
the defendant not testifying for any purpose whatsoever." Defense counsel further
asked the judge to instruct the jury to disregard the last statement of the prosecutor.

 In instructing the jury, the trial court stated, "Out of abundance of caution, you
will be required to disregard the last statement by the prosecutor." The trial court
denied appellant's motion for a mistrial. Appellant contends that the trial court's
instruction did not undo the harm of the Fifth Amendment violation, because it did
not admonish the State and did not let the jury know the seriousness of the violation
but instead treated the prosecutor's disregard of the law as just one more objection. 

 A comment by a prosecutor on the accused's failure to testify is a violation of
his privilege against self-incrimination and the freedom from being compelled to
testify contained in the Fifth Amendment of the United States Constitution and
Article I, § 10 of the Texas Constitution. U.S. Const. Amend. V; Tex. Const. art.
I, § 10; Bustamante v. State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). A
prosecutor's comment on an accused's failure to testify violates article 38.08. Tex.
Code Crim. Proc. Ann. art. 38.08 (Vernon 1979); Palermo v. State, 992 S.W.2d
691, 69 4 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). The comment must
clearly refer to the accused's failure to testify; an "implied or indirect allusion" is
insufficient to prove a violation of an accused's rights. Bustamante, 48 S.W.3d at
765. The test is whether the language used was manifestly intended or was of such
character that the jury would necessarily and naturally take it as a comment on the
defendant's failure to testify. Id.

 In this case, the comment made by the prosecutor was not so clear as to directly
refer to the appellant's failure to testify during the punishment phase. Furthermore,
error in a prosecutor's improper jury argument concerning a defendant's failure to
testify may be cured by an instruction to disregard the comment. See Linder v. State,
828 S.W.2d 290, 300 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). Only
offensive or flagrant error warrants reversal when there has been an instruction to
disregard, and, in the case at bar, this comment was not so flagrant that the instruction
to disregard was ineffective. See Wilkerson v. State, 881 S.W.2d 321, 327 (Tex.
Crim. App. 1994). The instruction by the trial court and the admonishment of the jury
were sufficient to cure any improper argument by the prosecutor.

 Appellant further complains that the prosecutor made another indirect improper
comment about his failure to testify. The prosecutor stated that:

 It is about what our society demands, which is that you force someone
when they won't say it, and by his actions on that witness stand he did
not, you force him to take responsibility.

 

 Appellant's defense counsel failed to object to this statement at trial and has,
therefore, waived his opportunity to complain on appeal. See Valencia v. State, 946
S.W.2d 81, 82-83 (Tex. Crim. App. 1997)

 We overrule appellant's third point of error. 

Conclusion

 We affirm the judgment of the trial court.

 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003).