Affirmed and Majority and Concurring Memorandum Opinions filed September
23, 2003









Affirmed
and Majority and Concurring Memorandum Opinions filed September 23, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01066-CR 

NO. 14-02-01067-CR

____________

 

DWAYNE ANDRE TYSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause Nos. 906,328 and 906,329

 



 

M
A J O R I T Y   M E M O R A N D U M   O P I N I O N

A jury found appellant, Dwayne Tyson, guilty on two counts of
aggravated robbery and, after finding true the allegation in an enhancement
paragraph that appellant had a prior felony conviction, assessed twenty-five
years= confinement in the Texas Department
of Criminal Justice, Institutional Division. 
On appeal, appellant complains that the State=s improper jury argument deprived him
of a fair trial, as guaranteed to him by the Sixth Amendment.  We affirm. 








FACTUAL AND PROCEDURAL BACKGROUND

During the late afternoon hours of March 20, 2002, appellant
entered into Finatra Auto Sales, where owner Anwar Vaid and his father
Mohammed Vaid were present.  Brandishing two guns and demanding obedience,
appellant ordered both men to get on the floor, and threatened to shoot them if
they did not stop speaking their native language (Gujarati).  After pressingCunsuccessfullyCfor the location of the safe,
appellant waited for about ten minutes, again threatening to kill the two
men.  Appellant took Anwar=s money and cell phone, then pulled
the hammer of the gun and again demanded the location of the safe.  But Anwar, scared
for his life, still insisted that there was no safe.  Appellant told the men that he was leaving
and that anybody trying to chase him would be killed.  After appellant left, Anwar
gave chase out of the store and onto a busy city street, but stopped when
appellant fired a shot in his direction. 


Another couple witnessed this pursuit, and watched as
appellant ran  to a gas station and
pointed a gun at a female who was refueling her car.  After appellant got in the car and sped away,
the female ran inside the gas station and notified the police.  Appellant proceeded to drive recklessly
across parking lots and small roads before being struck by a pursuing Houston
police officer=s car and finally apprehended.  When the police brought appellant back to
their store, both Anwar and Mohammed positively
identified appellant as the robber. 

After the jury found appellant guilty on two counts of
aggravated robbery, the case moved to the punishment phase, during which the
jury assessed a punishment of twenty-five years= confinement.  This appeal followed. 

DISCUSSION

I.          Improper
Jury Argument








In his sole point of error, appellant claims that the
prosecutor=s closing argument in the punishment
phase was improper because it asked the jurors to consider their own personal
feelings as to how they would feel if appellant confronted them on the
street.  The argument described appellant=s reckless acts and urged the jury to
put their family members in the midst of those actions.  In this closing argument, the prosecutor
appealed to the jury=s sense of family:

I wonder if any of you were out there
in that traffic when he was driving around, when he was flying across Gessner to brake, ... What if any of your family was out
there?

Directly after this statement, appellant=s counsel voiced his objection: AJudge, I=m going to object.  Improper closing.@ 
The judge overruled this objection and allowed the State to continue
with its closing argument. 

On appeal, the State contends, as a threshold matter, that
appellant waived his right to complain because his trial court objection was
too general.  That is, that Aimproper closing@ was not specific enough to preserve
error for appeal.  To support its
contention, the State cites several cases in which generally similar language
was considered insufficient to preserve error. 
Hougham v. State, 659 S.W.2d 410
(Tex. Crim. App. 1983); Huggins v. State, 795
S.W.2d 909 (Tex. App.CBeaumont 1990, pet. ref=d); Meek v. State, 628 S.W.2d
543 (Tex. App.CFort Worth 1982, pet. ref=d).   


The Texas Court of Criminal Appeals has long held, however,
that an objection is sufficient to preserve error when Athe correct ground for exclusion was
obvious to the judge and opposing counsel.@[1] 
Lankston v. State, 827 S.W.2d
907, 908 (Tex. Crim. App. 1992); see also Ex
parte Little, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994) (A[A]n objection may be phrased in any
manner which sufficiently appraises the trial judge and opposing counsel of the
nature of the complaint.@).  As such, all a
party must do is Alet the trial judge know what he wants, why he thinks himself
entitled to it, and to do so clearly enough for the judge to understand him at
a time when the trial court is in a proper position to do something about it.@ 
Lankston, 827 S.W.2d at 909.








Here, the objection was lodged at such a timeCimmediately after the prosecutor
asked the jurors to consider their familiesCthat the trial judge would know what
appellant=s counsel was objecting to and why he
was objecting to it.  See id.  Although it may be a close call, we conclude,
given the context, that the basis for the objection was apparent to the judge
and opposing counsel.  Accordingly, we
find that appellant=s objection was sufficient to preserve error on appeal. 

Having decided that appellant has preserved error for appeal,
we now look to see if the closing argument was, in fact, improper. The purpose
of closing argument is to help the jury properly analyze the evidence presented
at trial so that it may arrive at a just and reasonable conclusion based on the
evidence alone and not on any fact not admitted in evidence.  Campbell v. State, 610 S.W.2d 754, 756
(Tex. Crim. App. 1980). 








Asking jurors to consider what a victim experienced during a
crime, or the effects of a crime on the victim or the victim=s family members, naturally requires
jurors to Aplace themselves in the shoes@ of the victim or the victim=s family.  Some appellate courts have, in years past,
employed a per se rule against placing the jury in the victim=s shoes, because it involves matters
outside the record.  Chandler v. State,
689 S.W.2d 332, 334 (Tex. App.CFort Worth 1985, pet. ref=d); Williams v. State, 732
S.W.2d 762, 765 (Tex. App.CBeaumont 1987, no pet.); see also Palermo v. State,
992 S.W.2d 691, 696 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d). 
However, courts have also held strongly to the principle that the
prosecutor has the right to personalize, by way of illustration, the
circumstances of a crime.  Palermo,
992 S.W.2d at 696 (stating the State may Apersonalize the circumstances of a
crime, when making a plea for law enforcement@); Barnes v. State, Nos.
14-97-00307-CR, 14-97-00401-CR, 14-97-00404-CR, 1999 WL 672352 at *5 (Tex. App.CHouston [14th Dist.] August 31, 1999,
pet. ref=d) (not designated for publication)
(stating that A[i]t is
proper for a prosecutor to vividly recount the events@). 
Due to these two seemingly conflicting principles, courts have recently
distinguished between a proper and improper jury argument.  Palermo, 992 S.W.2d at 696; see
also Torres v. State, 92 S.W.3d 911, 920B21 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  Indeed, A[t]he distinction between fully
appreciating the victim=s pain and suffering, on the one hand, versus how the victim
would want the defendant punished, on the other, is a subtle, but important
distinction.@ 
Torres, 92 S.W.3d at 922. 

While it may be impossible to articulate a fail-safe test, it
does help to consider the characteristics of proper and improper jury
argument.  A proper jury argument must
fit in one of four general areas: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; and
(4) plea for law enforcement.  Brandley v. State, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); Guidry v. State, 9 S.W.3d 133, 154
(Tex. Crim. App. 1999).  Generally, a proper jury argument focuses
more on the actions of the defendant and the reactions of the victim, not
the jury.  See Linder v. State,
828 S.W.2d 290, 303 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d). 
Put differently, a proper jury argument focuses on the defendant=s moral blameworthiness.  See Torres 92 S.W.3d at 921.  In Linder, for example, the court
found the following argument to be proper: 

ACan you imagine what it=s like to know that someone has gone
into your home ... Imagine what it=s like and what kind of person it
takes to go back and pick up an innocent defenseless woman whose son is
sleeping right next to her ... Can you imagine what it was like to be that
woman?@ 


Linder, 828
S.W.2d at 303.

The appellate court noted that each detail was a summation of
the evidence of the recordCin particular, the testimony of the complainant.  Id. 
And it focused on the defendant=s blameworthiness.  Accordingly, it was a legitimate appeal to
the jury to apply their general knowledge and experience to the evidence
adduced at trial.   








On the other hand, in making an improper argument, the
prosecutor goes beyond the record if there is an attempt to entice the jury to
render a verdict based on emotion, rather than impartiality.  See, e.g., Brandley,
691 S.W.2d 699, 712 (Tex. Crim. App. 1985); Torres,
92 S.W.3d at 922 (holding that the prosecutor=s inflammatory argument was improper
because it asked the jury to render a verdict based upon personal
passion).  The court must therefore
determine whether the argument openly pleads with the jury to abandon their objectivity
in deciding the case.  Torres, 92
S.W.3d at 922.  This can be seen in the
case of Boyington v. State, 738 S.W.2d
704, 709 (Tex. App.CHouston [1st Dist.] 1985, no pet.), in which the prosecutor
implored the jurors to consider their family: ABecause what would you do if this
happened to your family?  How would you
feel if your home was firebombed one night and you saw your children on fire?@ 
Similarly, in Brandley, the court found
this impressionable argument improper: AIt is fair for you to think about the
feelings of the father who lost his baby daughter and it is fair for you to
think about how you would feel if you lost your children...@ [2]
 Brandley,
691 S.W.2d at 712. 

It is clear that the prosecutors in both Brandley
and Boyington focused less on the defendant=s actions, and more on the jury
themselves.  In doing so, each prosecutor
Adirectly and explicitly urged the
jury to punish the defendant as if he had actually attacked them and their
families.@ 
Linder, 828 S.W.2d at 303. 
And neither argument focused on the defendant=s blameworthiness, but rather
attempted to emotionally charge the jury to render a revenge-based verdictCas if the victim were a family
member.  In short, these arguments asked
the jurors to abandon their objectivity and did not ask them to be impartial. 








Here, the prosecutor has walked the path of Boyington and Brandley.  She has asked the jury to consider AWhat if your family is out there,@ and AI wonder if any of you were out
there.@ 
This is far from the evidence adduced at trial, and is not a mere
summary of the evidence.  It could be
argued as a plea for law enforcement, but much like Brandley,
it goes too far.  It asks the jury to
consider their own families, not those of the victims.  It asks them to punish this defendant for any
harm that he could have caused to them, rather than the harm he did in fact
cause.  And, most importantly, it does
not focus on the defendant=s moral blameworthiness, but rather on the jury=s emotions.  In short, it asks the jury to abandon its
objectivity in making its decision.  See
Brandley, 691 S.W.2d at 712.  As such, we find the argument to be
improper.  However, even though we find
the argument to be improper, we must still examine the error=s effect and determine whether the
appellant was denied a fair trial. 

II.        Standard of
Harm

When reviewing alleged error in a jury argument, the
appellate court must analyze the statement in light of the entire argument and
not through isolated instances.  Drew
v. State, 743 S.W.2d 207, 220 (Tex. Crim. App.
1987).  Because comments upon matters
outside the record, even though outside the permissible areas of jury argument,
do not appear to raise any unique concerns that would require us to assign
constitutional status, we will apply the standard of harm for nonconstitutional errors.  See Martinez v. State, 17 S.W.3d
677, 692 (Tex. Crim. App. 2000).  And any nonconstitutional
error Athat does not affect substantial
rights must be disregarded.@  Tex. R. App. P. 44.2(b).  In Martinez, the court prescribed
three factors to consider when determining if a substantial right was effected:
(1) severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor=s comments), (2) measures adopted to
cure the misconduct, and (3) the certainty of conviction absent the misconduct.
 Id. (citing Mosely
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998), cert. denied, 526 U.S. 1070, 119 S. Ct. 1466, 143 L. Ed. 2d 550
(1999)).  Because the argument occurred
during the punishment phase, the third factor is modified to include Athe certainty of >the punishment assessed.=@ 
Id. at 693.








The first factor is concerned with the severity of the
misconduct.  In this case, it seems that
the comment was not a personal attack on the defendant, but rather was intended
to be a plea for law enforcement.  See
Martinez, 17 S.W.3d at 693.  Instead
of dwelling on that particular line of argument, the prosecutor briefly made
the comment after describing the violent nature of appellant=s acts.  By asking the jury to think of their
families, on the road at the same time as the defendant, the prosecutor was
simply trying to stress the importance that innocent people be free from
harm.  As such, the comment is, at most,
mildly improper. The prosecutor=s main pointCthat innocent people could be harmedCis an entirely legitimate point to
make.  See id. at 693.

Turning to the second factor, we look to whether the court
provided any cautionary instruction, and the effectiveness of the
instruction.  See id. at 692.  Here, the court did not instruct the jury at
all after overruling appellant=s objection to the jury argument.  However, the prosecutor did nothing to
emphasize the erroneous aspects of this ruling. 
And we believe the prosecutor=s inaction nullified any harm which
might have occurred because of the court=s failure to take curative
measures.  Therefore, the court=s failure to provide a cautionary
instruction carries little weight in our analysis. 

The third factorCevidence presented at the punishment
phase, including the punishment assessedCweighs heavily in the State=s favor.  See id.  After the jury returned a guilty verdict on
two counts of aggravated robbery, the case entered the punishment stage, in
which the jury found the enhancement paragraph to be Atrue.@ 
As to the robbery of Finatra Auto Sales,
appellant expressed remorse and explained that another man approached him with
the idea of the robbery, and that it essentially took place as the witnesses
had described.  Appellant also testified
about his drug addiction, and stipulated to a prior conviction for felony
possession of a controlled substance. 
Additionally, the State introduced new evidence of three unsolved
robberies in which appellant was a suspect. 
Appellant denied any involvement in these three cases, but each of the
three victims in these robberies identified him as the assailant.  Given the overwhelming evidence against
appellant, appellant=s own confirmation of that evidence, as well as the evidence
of other crimes, the prosecutor=s comments were relatively mild.  Furthermore, the comments constituted only a
small portion of the closing argumentCin 12 pages of argument, the improper
argument took up less than one-fourth of one page.  The jury assessed a sentence of 25 years,
which is on the low end of the punishment range (5B99 years) for this offense.  See Torres, 92 S.W.3d at 924. 








After carefully considering these three factors, as well as
appellant=s failure to address the issue of
harmful error, we conclude that the State=s argument did not affect appellant=s substantial rights. While we
acknowledge that the jury argument was improper, we find that, considering the
evidence supporting appellant=s sentence, the error associated with that argument was
harmless.  Therefore, we overrule appellant=s sole point of error. 

The trial judgment is affirmed.  

 

 

 

 

/s/        Wanda
McKee Fowler

Justice

 

 

 

 

Judgment rendered and Opinion filed
September 23, 2003.

Panel consists of Chief Justice Brister and Justices Hudson and Fowler. (Hudson, J.
Concurring).

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Indeed, the
cases that seem to take a more Aslavish and unforgiving approach, _ have dwindled in importance as they have in
frequency.@  Lankston, 827 S.W.2d at 908. 





[2]   The court in Brandley found this improper, but nonetheless found
the error harmless since the trial court gave a timely instruction to
disregard.  Brandley,
691 S.W.2d at 713.